Jerome H. Mooney (UT SBN: 2303)
jerrym@mooneylaw.com
Weston, Garrou & Mooney

G. Randall Garrou
(*Pro hac vice* application pending)
randygarrou@wgdlaw.com
Of Counsel to Weston, Garrou & Mooney

12121 Wilshire Boulevard, Suite 525
Los Angeles, California 90025-1176
Telephone: (310) 442-0072
Facsimile: (310) 442-0899

Attorneys for Plaintiff Richard Bugg

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| RICHARD BUGG, an individual, | Case No. 4:22-cv-00062-DN |
| Plaintiff, | |
| v. | **AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| MINDY BENSON, President of the Southern Utah University, KEVIN PRICE, Assistant Vice President, Human Resources, JON ANDERSON, Provost, JAKE JOHNSON, Title IX Coordinator, BRIAN SWANSON, Chair of the Department of Theatre, Dance & Arts Administration, SHAUNA MENDINI, Dean of Department of Theatre, Dance & Arts Administration, and DOES 1-25, | |
| Defendants. | |

**INTRODUCTION**

1.     This case involves a clash between the First Amendment free speech rights of a university professor and the power of a state university to compel that professor to engage in what the professor considers politically sensitive speech to which the professor is politically and educationally opposed. Here, a college student who identifies as "non-binary," *i.e.,* neither male nor female, demanded that a professor address the student by plural pronouns such as "they" and "them." The demand was made pursuant to a University policy which, as interpreted by school officials, requires professors to address students by whatever personal pronouns the student insists upon, including not only plural pronouns, but also, on demand, a seemingly endless array of newly-invented pronouns such as, *e.g*., Zie, Sie, Ey, Ve, Tey and E, to name but a few.

2.     Although the Plaintiff Professor willingly agreed to refrain from using any gender-based pronouns to address that student, and affirmatively offered to address that student either by the student's name or by the traditional singular pronouns of the student's choice, his refusal to acquiesce in the student's demands resulted in an order that any future refusal to acquiesce in those demands would result in severe discipline including the professor's dismissal, among other possible sanctions.

**JURISDICTION & VENUE**

3.     This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, the Civil Rights Act of 1871, 42 U.S.C. § 1983, 20 U.S.C. § 1681(a) and Title IX of the U.S. Education Amendments of 1972 as amended and codified at 34 CFR § 106.30.

4.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. 1343 (jurisdiction over civil rights actions).

5.     This Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 (a) (4) and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and/or all of the acts described in this Complaint occurred in this district.

## THE PARTIES

7.     Plaintiff Richard Bugg is a resident of Utah and a tenured professor at Southern Utah University ("SUU" or "the University"), a public four-year state-supported university.

8.     Defendant Brian Swanson is, and was at all times relevant to this Complaint, the Chair of the Department of Theatre, Dance, & Arts Administration at SUU. He is sued in his official capacity only.

9.     Defendant Swanson possesses the authority and responsibility for governing and regulating faculty in the Department of Theatre, Dance, & Arts Administration at SUU.

10.     Defendant Swanson's duties include overseeing Professor Bugg.

11.     Defendant Shauna Mendini is, and was at all times relevant to this Complaint, the Dean of the College of Arts and Sciences at SUU. She is sued in her official capacity only.

12.     Defendant Mendini possesses the authority and responsibility for governing and regulating faculty in the College of Arts and Sciences at SUU.

13.     Defendant Mendini's duties include overseeing the various departments that comprise the College of Arts and Sciences at SUU, including the Department of English and Humanities.

14.     Defendants Mendini and Swanson each possesses the authority to interpret and enforce the SUU policies challenged herein.

15.     Defendant Jon Anderson was at all relevant times the Provost and Vice President for Academic Affairs for SUU. He has authorized, approved, and implemented the policies that are challenged herein and that are being used to restrict Professor Bugg's expression. He is sued in his official capacity only.

16.     Defendant Anderson has approved, confirmed, and implemented the sanctions challenged herein against Professor Bugg in a discriminatory and retaliatory fashion.

17.     Defendant Jake Johnson is, and was at all times relevant to this Complaint, the Title IX Coordinator at SUU. He is sued in his official capacity only.

18.     Defendant Johnson's duties include overseeing SUU's Title IX office and compliance efforts.

19.     Defendant Johnson possesses the authority to enforce the SUU policies challenged herein and to recommend changes to them.

20.     Defendant Kevin Price was at all other times relevant to this Complaint the Assistant Vice President, Human Resources at SUU. He is sued in his official capacity only.

21.     Defendant Kevin Price, SUU's Responsible University Administrator, possesses the authority to enforce the SUU policies challenged herein and to recommend changes to them.

22.     Defendant Price's authority and powers included deciding and setting the disciplinary sanctions in this matter.

23.     Defendant Mindy Benson was at all relevant times the President of the University. She is sued in her official capacity only.

24.     Defendant Benson directly oversees Defendants Price and Johnson.

25.     As president, Defendant Benson has the responsibility for final policymaking authority concerning faculty members at SUU.

26.     As president, Defendant Benson possesses the authority and responsibility for governing, overseeing, and disciplining faculty members at SUU.

27.     As president, Defendant Benson was and is aware of the retaliatory and unconstitutional actions authorized by and occurring under the challenged policies and has not instructed SUU personnel, including the other Defendants, to change or alter either the policies or the actions taken pursuant to those policies to comply with constitutional mandates.

28.     As president, Defendant Benson has the authority to review, approve, or reject the decisions of other SUU officials, including the other Defendants, regarding the policies challenged herein.

29.     Defendants Benson, Price, Swanson, and Johnson each has the authority under the policies challenged herein to investigate, recommend disciplinary actions, and impose disciplinary actions on faculty at SUU.

30.     In executing their respective responsibilities, Defendants Benson, Price, Swanson, and Johnson each implements the policies challenged herein.

31.     Defendants Benson, Price, Swanson, and Johnson, independently and in consultation with each other, are responsible for enforcing the policies challenged herein and applying them to Professor Bugg.

32.     Defendants Benson, Price, Swanson, and Johnson have failed to cause or recommend any changes to the policies challenged herein or to how those policies are enforced to comply with constitutional mandates.

33.     Defendants Benson, Price, Swanson, and Johnson have failed to stop SUU officials, including each other and the other Defendants, from applying the policies challenged herein to faculty, including Professor Bugg.

34.     Doe Defendants are individuals, unknown to Plaintiff at this time, who exercise control over the creation, interpretations and enforcement of the policies challenged herein.

**COLOR OF LAW**

35.     The actions of each of the Defendants were taken "under color of" the written policies of Southern Utah University, which are a "regulation, custom, or

usage" of the State of Utah within the meaning of 42 U.S.C. § 1983, and, to the extent shown to be violative of Plaintiffs federal statutory and federal constitutional rights, are actionable under 42 U.S.C. § 1983.

36.    SUU is a recipient of federal education funding and, accordingly, is required to comply with Title IX of the Education Amendments of 1972 (Title IX), as amended, (CFR § 106.30), enacted to enforce the provisions of 20 U.S.C. § 1681 *et seq.*

37.    Defendants' actions constituted the state's "custom" in enforcement of Title IX and are therefore addressable under 42 U.S.C. § 1983.

38.    The actions of each of the Defendants have deprived Plaintiff of rights and privileges secured by the Constitution and laws of the United States, within the meaning of 42 U.S.C. § 1983.

## BACKGROUND

39.    SUU is a four-year public state-supported university accredited under the laws of the State of Utah.

40.    Professor Richard Bugg teaches acting at SUU and is dedicated to helping students in ways that prepare them for the demanding and difficult rigors of professional life as a performer. He is a tenured professor with over 30 years' experience.

41.    On September 9, 2021, the Professor's Acting IV class met for its first session of that Fall's semester. A student[1] ("Complainant") was enrolled in Professor Bugg's class and, during that first class of the semester, demanded that Professor Bugg address Complainant[2] using the plural pronouns "they/them" because Complainant identified as "non-binary," *i.e.*, not identifying as being either male or female.

---

[1]   The student's name has been withheld for privacy reasons.

[2]   Complainant is a biological female who identifies as "non-binary,' *i.e.,* neither as male nor female. For clarity, and to avoid unnecessary offense, all references to Complainant herein shall be to Complainant, rather than, *e.g.*, he, she, him, her, his or hers.

42. The term non-binary is a social construct that describes one's preferred gender description as opposed to a description of the person's actual biological sex. Although transgender persons may be biologically non-binary, the gender preference of "non-binary" is also used by some who are unquestionably biological males or females who are bisexual, as well as by some who are unquestionably biological males or females who are homosexual.

43. In short, the term "non-binary" can be used both by those who are born "non-binary," but also by those who choose to so identify themselves.

44. Unlike biological sex, the decision whether one identifies their gender as non-binary can change, and can even change frequently, over the course of one's life.

45. Perhaps surprisingly, an announced desire to be referred to by non-binary pronouns can even be made by a student who is strictly heterosexual but chooses to be identified by non-binary pronouns as either an act of rebellion or as a show of support for others.

46. SUU policy not only allows individuals to self-identify their gender and articulate their desired pronouns but compels everyone else to not only respect, but adopt, their choices.

47. The Professor's position on this issue appears in the record as follows:

> I ... am opposed to the coercion of speech that is taking place on our campus and on most campuses. Asking people to use plural pronouns to refer to individuals is one thing. Forcing them to do it is another and contrary to our rights of free speech.[3]

48. Accordingly, the Professor declined Complainant's demand to be addressed with plural pronouns but, instead offered to use Complainant's name or whatever singular pronouns or proper name Complainant preferred in order to

---

[3] This is found at Exhibit D-30 of the Written Determination discussed *infra*.

accommodate Complainant and make Complainant feel as comfortable as possible without violating the Professor's own deeply-held beliefs and convictions.

49.     Although the Professor attempted to not utilize female pronouns when describing Complainant (a virtually impossible task), it is admitted that he unintentionally did so two or three times.

50.     Finding the Professor's offer unacceptable, Complainant submitted a formal complaint to the University's Title IX Office on September 15, 2021. Another student in the class also submitted a complaint claiming to have been offended by the Professor's refusal to honor Complainant's demand.

51.     Before filing this formal complaint, Complainant expressed to classmates that Complainant's goal was to get the Professor fired because he would not agree to Complainant's demands. To further that goal, the record reflects that Complainant exerted strong pressure on Complainant's classmates to boycott the Professor's class and demanded that the University establish an alternate so-called "shadow class" for those who would go along with Complainant's plan for a boycott of the Professor's class.

52.     The Professor's concerns with students' demands to be addressed by their preferred personal pronouns are not limited only to Complainant's request to be addressed by *plural* pronouns. The University's Undergraduate Handbook, which authorized and encouraged Complainant's request, says:

> **Gender Identify Announcement.** Students have the right to express their gender identity freely. The faculty are committed to creating a safe positive learning environment for each and every student. If a student would prefer that we use a specific gender pronoun, please let faculty know during class introductions, office hours, or by email.

53.     While the Handbook does not facially compel professors to acquiesce in such requests, it appears to have been so construed by SUU, as Defendant Swanson

1  sent a copy of it to be considered by those who were assigned to conduct the initial

2  investigation of the complaints against Professor Bugg.

3      54.    To the extent the Handbook requires professors to acquiesce in students'

4  requests to be addressed by any "specific gender pronoun" they prefer, it goes even

5  beyond a requirement that a professor can be compelled to use *plural* pronouns to

6  describe individuals.

7      55.    There are at least several dozen recently-coined specific gender pronouns

8  by which non-binary students may potentially choose to have themselves addressed.

9  As but a small example, these pronouns include not only "They" and "Them", but

10  also, *e.g.*, Zie, Ze, Sie, Ey, Ve, Tey, E, Zieself, Hirself, Eirself, Verself, Terself,

11  Emself, Hir, Xe, Xem, Hy, Hym, Co and Coz. Plaintiff is informed and believes that

12  there are dozens of others.

13      56.    Given that a professor isn't limited to teaching only one student at a time,

14  and the University's policy is to accommodate the wishes of all students, it is

15  unreasonable to require a professor to learn entirely new languages of pronouns and

16  then remember which students demand recognition by which pronouns.

17      57.    The Professor's opposition to being compelled to personally use

18  whatever such pronouns a student demands violates the Professor's strongly held

19  political belief that the compelled fluid use of such pronouns is wrong for several

20  reasons and should not be forced on the unwilling. While willing to refrain from

21  intentionally using pronouns which would make a student uncomfortable, he does not

22  believe he should be forced to use what he believes are improper pronouns.

23      58.    Gender identity has become a highly charged political issue. A brief,

24  non-exhaustive, sampling from across the United States illustrates the broad,

25  pervasively political nature of gender identifying language, including pronoun use:

26      • Nevada's Governor signed into law 2019's Bill, NV S.B. 364,

27        which in Section 3, requires certain medical facilities to

28        ensure that all records maintained by the facility concerning
      a person refer to the person using the gender identity, name

and pronouns preferred by the person. Note, that while this requires use of preferred pronouns in records it does not address how such individuals are to be addressed.

- Iowa's Senate introduced, but failed to enact 2019's Bill, IA S.B. 2257. Directing the Dept. of Human Services to, among other things, identify research-based instruction that supports lesbian, gay, bisexual, transgender, and questioning youth, including linguistic tools such as the correct use of pronouns and names, for incorporation into necessary training for department staff and for agencies or individuals licensed.

- Delaware's 2017 Bill, DE H.J.R. 6, which provides "…State employees not be discriminated against based on their gender identity or expression, including the right to be called by their preferred names and pronouns…"

- Illinois' Senate adopted a 2019 resolution, IL S.R. 403, stating in part "[o]n May 11, 2017 the Department of Children and Family Services updated Appendix K to Procedures 302" which among other things "requires caregivers to affirm and support an LGBTQ child/youth's sexual orientation and gender identity, including by:  (a) using the child/youth's preferred name and gender pronouns (including gender-neutral pronouns, such as "they/them"), including in written documents and records when the youth agrees."

- Nebraska's legislature in 2021's Bill, NE L.B. 1136, failed to adopt the Senior Care LGBTQ Discrimination Prevention Act. The Act would have, among other things, identified as discriminatory "Willfully and repeatedly failing to use a resident's preferred name or pronouns after being clearly informed of the preferred name or pronouns."

- Oklahoma's House, with Senate concurring, introduced a Bill (adopted on May 27, 2016), OK H.C.R. 1021, "THAT the Oklahoma Legislature supports the Attorney General of the State of Oklahoma in taking whatever action is necessary to protect Oklahoma students, parents and school districts from effects of the Dear Colleague Letter on Transgender Students dated May 13, 2016, issued by the Civil Rights Division of the United States Department of Justice and the Office for

10
COMPLAINT

Civil Rights of the United States Department of Education, and from the overreach of the federal government on the issue of the application of Title IX to transgender students and gender identity."

- The United States House, Senate, and administrative agencies have held hearings and made attempts to change U.S. statutes and codes, more than 30 times in the past decade alone to reflect politically preferred outcomes regarding expression of, and protection of gender identity. The states of California, New York, New Jersey, and the District of Columbia have done the same more than 180 times.

59.   To accommodate Complainant's demand for plural pronouns would require Professor Bugg to communicate views regarding human nature, social dynamics, gender identity, and its impact upon the English language that not only violate his political beliefs, but would also, in his opinion, be contrary to the dual good educational objectives of (1) promoting clarity of expression and (2) providing students with the best chance for success once out in the real world. For these various reasons he does not wish to communicate by use of such plural pronouns when referring to single individuals in his class.

60.   Additionally, the compelled use of whatever pronouns are demanded by any student imposes upon him an impossible and unreasonable burden of compliance.

61.   Commencing on September 20, 2021, the University initiated a formal investigation, conducted by Johnny MacLean, Caitlin Gerrity, Brian Fullerton, and Jeremiah Smith, ("the investigators").

62.   An investigative report was issued on January 6, 2022, finding that the refusal to "address [Complainant] by their personal pronouns" was in violation of University Policies 5.27 and 5.60 and was "'discrimination' and 'harassment' based on gender identity." (Investigative Report page 36.)

63.   Professor Bugg requested a hearing asserting both that his conduct did not in fact violate these policies and also that if the policies were interpreted such that

1   he would be in violation, the policies were unconstitutional, in violation of his
2   constitutional rights.

3        64.   The hearing was conducted via Zoom on March 23, 2022. On April 29,
4   2022, the Hearing Officer issued a "Written Determination" (hereafter
5   "Determination") which was submitted to the University. The Determination found
6   that "it is more likely than not that Richard [Professor Bugg]" violated "Policies 5.60
7   and SUU Policy 5.27 in that he . . . engaged in conduct that constitutes
8   'discrimination' and 'harassment' based on gender identity."

9        65.   The Determination found that SUU Policy 5.60's prohibition of "sexual
10   harassment" has the following three elements:  conduct based on sex which is "[1] so
11   severe, [2] pervasive, and [3] objectively offensive," that it "effectively denies"
12   a student "equal access to [sic] University Education Program or Activity."

13        66.   SUU's sexual harassment policies were written to mirror Title IX's
14   prohibition of "sexual harassment," which, pursuant to the holding of *Davis v. Monroe*
15   *County*, 526 US. 629 (1999), and the Title IX Final Rule of May 19, 2020, has
16   essentially the same three elements.

17        67.   The Determination concluded that the Professor's conduct met all three
18   elements and thus constituted "sexual harassment." Specifically, it found that the
19   Professor's conduct was "conduct based on sex" which was "so [1] severe,
20   [2] pervasive, and [3] "objectively offensive," that it "effectively denie[d]"
21   Complainant "equal access to [sic] University Education Program or Activity."

22        68.   Although the Determination never specifically said that the Professor's
23   conduct violated Title IX, it implicitly so ruled since SUU's policies contain the same
24   three elements required to prove a sexual harassment violation of Title IX and SUU's
25   policies were written for the purpose of enforcing Title IX requirements.

26        69.   On May 3, 2022, Defendant Price, the University's Assistant Vice
27   President, Human Resources, acting in his capacity as "Responsible University
28   Administrator under SUU Policy 5.60," issued a letter (attached hereto as Exhibit A)

to Defendant Johnson, SUU's Title IX Coordinator, articulating disciplinary sanctions based on that Written Determination. The specific sanctions were:

    a.   Professor Richard Bugg submit to education about current views and opinions of English language and grammar experts and resources that using Gender-Neutral pronouns when referring to an individual is now considered grammatically correct.

    b.   This action and decision stand as written warning regarding the use of *preferred pronouns*. If Professor Bugg continues to refuse to make a good faith effort to use preferred pronouns it will be considered an additional violation of policy 5.60 and 5.27 and may result in further sanction up to and including termination.

    c.   If Professor Bugg refuses to make a good faith effort to use *pronouns requested by SUU students*, and as a result, students refuse to register for sections of classes he teaches, SUU will open additional section of those classes and Professor Bugg's pay will be reduced to offset the amounts SUU must pay for the additional sections."

(Emphases added)

70.   Consistent with the Undergraduate Handbook, these sanctions require Plaintiff to use whatever pronouns are requested by a student (*i.e.*, the sanctions are not even limited to requiring use of the two pronouns of "they/them" demanded here by Complainant) and provide no defined list limiting the pronouns that could be demanded under the authority of these sanctions.

71.   On May 26, 2022, Professor Bugg appealed from the sanctions. The appeal was denied on June 14, 2022, by SUU Provost Defendant Anderson (*see* Exhibit B), who then added the following additional sanction:

    Professor Richard Bugg must review, and edit as necessary, his syllabus language to ensure it aligns with department guidance

related to gender pronouns, and submit the syllabus for approval by the Department Chair two weeks before the start of the Fall 2022 semester.

**FIRST CAUSE OF ACTION**
**For Declaration That the State's Policies, as Construed by Defendants, Violate the Freedom of Academic Speech and Freedom Against Compelled Expression Guaranteed by the First and Fourteenth Amendments, and For Related Injunctive Relief (42 U.S.C. § 1983)**

72.    Plaintiff hereby repeats and realleges each of the factual allegations set forth in this Complaint.

73.    When Professor Bugg articulated his position regarding the use of plural pronouns for addressing single individuals, he did not prohibit others from using such pronouns, but merely stated his position that he, himself, would not agree to use such pronouns. When he refused to use the demanded pronouns, he was expressing a legitimate political position on a matter of public concern and engaging in his First Amendment right against compelled expression.

74.    Professor Bugg's interest, as a professor at a public university, in refusing to bend to newly articulated "orthodoxy" on a matter of public concern outweighs Defendants' interest in the efficient provision of services, and this is only exacerbated by the fact that there is nothing efficient about a system which requires a professor to use whatever pronouns a student may demand, without providing a defined list of the permissible choices.

75.    Professor Bugg's speech on matters of public concern never prevented Defendants from efficiently providing services to the public (or even threatened to do so.) The school would have run efficiently if its policies articulated a politically neutral one that gave professors the option of addressing non-binary students either by their names or by their requested pronouns. The lack of efficiency which Defendants complain of was the result of SUU's failure to clearly articulate such a

policy. Had it done so, no unrealistic expectations would have been created and there would likely not have been a boycott or any loss of efficiency.

76.   Defendants' interpretation and enforcement of its nondiscrimination policies and their threatened future enforcement of those interpretations of policies compelled speech which Plaintiff found politically unpalatable and would deter a person of ordinary firmness from exercising his right to free speech in the future.

77.   Defendants' interpretation of the nondiscrimination policies and their enforcement of those interpretations violate Professor Bugg's right to free speech as guaranteed by the First Amendment and Fourteenth Amendments to the United States Constitution.

**SECOND CAUSE OF ACTION**
**For Declaratory and Injunctive Relief for Violation of Plaintiff's**
**First and Fourteenth Amendment Due Process Rights Due to**
**Vagueness and Overbreadth of Standards Defendants Required**
**Plaintiff to Meet**
**(42 U.S.C. § 1983)**

78.   Plaintiff hereby repeats and realleges each of the factual allegations set forth in this Complaint.

79.   At no point prior to the initiation of the disciplinary proceedings did any University official or any University written proclamation or policy specifically inform Plaintiff that he was required to use a student's preferred pronouns.

80.   Neither, prior to the initiation of the disciplinary proceedings against him, did any University official or any University written proclamation or policy inform Plaintiff that he was not entitled to elect to address self-declared non-binary students by using the student's name. (To the contrary, he was expressly told it would be *permissible* to use a student's name rather than a student's choice of personal pronouns.)

81.   Exacerbating that lack of clarity, Defendant Swanson instructed the investigators to consider the provisions of the Undergraduate Handbook in analyzing whether Plaintiff had violated the school's policies or Title IX.

82.   As noted *supra*, the Handbook encourages non-binary students to request that professors address them by the pronouns of the student's choice, rather than a specified list of pronouns that are compulsory if they are requested but not used.

83.   More significantly, the order of sanctions specifically required Plaintiff to use *whatever* pronouns are preferred by any student, without any limitation on what those pronouns could be.

84.   For each of the following distinct reasons, the sanctions and school policies deny Plaintiff due process due to their vagueness and overbreadth.

85.   First, the failure of any of SUU's written policies to clarify that use of preferred pronouns is compulsory rather than suggested, renders the sanctions against Plaintiff in violation of Plaintiff's due process right to not be subject to vague requirements which impinge on his liberty.

86.   Second, even if the Handbook and the school's written policies enforcing it had been modified to expressly state that professors must use a student's preferred pronouns, they would nonetheless still be unconstitutionally vague, and would also be overbroad, because the Handbook does not provide a fixed list of optional personal pronouns which, on the demand of a student, a professor must be compelled to use.

87.   Likewise, the *order of sanctions* is vague and overbroad because it does not provide a fixed list of optional personal pronouns which, on the demand of a student, Plaintiff is compelled to use.

88.   For each of the reasons above, the school's policies, as construed and applied by defendants, and the order of sanctions, are impermissibly vague and overbroad, in violation of the Free Speech and Due Process guarantees of the First and Fourteenth Amendments and cannot support any of the sanctions imposed against him.

**THIRD CAUSE OF ACTION**
**For Declaratory and Injunctive Relief on Grounds That Defendants**
**Imposed Content-Based Restrictions on Plaintiff's Expression**
**Which Violated His Rights to Equal Protection in The Exercise of**
**Fundamental Rights**
**(42 U.S.C. § 1983)**

89.   Plaintiff hereby repeats and realleges each of the factual allegations set forth in this Complaint.

90.   SUU opened an additional section of the class which Plaintiff taught (referred to herein as the "shadow class") which was taught by Professor Peter Sham, to accommodate students who did not want to stay in the section of the class that was taught by Plaintiff.

91.   Professor Sham "was appalled by, disappointed by, and diametrically opposed to, Richard's refusal to use Gender-Neutral Pronouns" (Determination Finding of Fact 21). "[T]he first week or so" of his class were "essentially therapy sessions where the students discussed what had happened and worked through it," and he did not "engage in meaningful acting exercises in the class" during that time. (Exhibit D-24 to Determination.)

92.   The Determination (at p. 17) faulted Plaintiff on the ground that "the issue of whether gender-neutral pronouns should be used when referring to an individual is not relevant to the subject matter of the class." The basis for this assertion of fault was provided as follows:

> [U]nder the category "academic freedom, "faculty members shall not use academic freedom as a pretext to teach controversial matter that is not related to the subject matter of the course they are teaching."

93.    However, that is precisely what Professor Sham, who was "diametrically opposed" to Plaintiff's political belief, admits he did for "the first week or so," yet Professor Sham was not faulted.

94.    Both Professors Sham and Bugg were engaged in protected First Amendment expression in discussing their views on the exact same topic, *i.e.*, the compulsory use of plural pronouns to describe individuals, but Defendants applied their policies unequally in sanctioning only the views of one Professor; the one with whom they disagreed.

95.    The Defendants violated Plaintiff's First and Fourteenth Amendment rights to Free Speech and Equal Protection by permitting the expression of political views by one professor while sanctioning the expression of the diametrically opposite views by Plaintiff, and particularly since Plaintiff endeavored to limit the discussion of those views as much as possible, in contrast to the actions of Professor Sham who allowed such discussion to occupy no less than "a week or so," to the exclusion of teaching the subject matter of the class.

**FOURTH CAUSE OF ACTION**
**For Declaratory and Injunctive Relief on Grounds That Plaintiff's**
**Conduct Did Not In Fact Violate The School's Published Policies**
**(42 U.S.C. § 1983)**

96.    Plaintiff hereby repeats and realleges each of the factual allegations set forth in this Complaint.

97.    The Determination uses Policies 5.27 and 5.60 to find Professor Bugg in violation (Determination, pp.10-14.) A true copy of these policies is attached hereto as Exhibits C and D, respectively.

98.    Neither Policy 5.27 nor Policy 5.60, on its face, specifically requires that Professors must use plural pronouns (or any other pronouns) at the request of students.

99.   The Professor's conduct did not in fact constitute either "discrimination" or "harassment" based on gender identity pursuant to either of these two written policies and Defendants erred in construing them otherwise.

**FIFTH CAUSE OF ACTION**
**For Declaratory Relief That Plaintiff's Conduct Did Not Violate Title IX**
**(42 U.S.C. § 1983)**

100.  Plaintiff hereby repeats and realleges each of the factual allegations set forth in this Complaint.

101.  SUU adopted Policies 5.27 and 5.60 in order to comply with the requirements of Title IX.

102.  Plaintiff was sanctioned by the University's Title IX Coordinator pursuant to a formal complaint filed with its Title IX Office.

103.  Although the Determination did not make a specific finding on whether Plaintiff's conduct violated Title IX, its findings were based on the same findings necessary to find a Title IX violation.

104.  Title IX was enacted by the U.S. Department of Education to enforce the provisions of 20 U.S.C. § 1681(a) which, in pertinent part here, says:

> (a) . . . . No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

105.  Under the Title IX Final Rule of May 19, 2020 (see https://www.federalregister.gov/documents/2020/05/19/2020-10512/nondiscrimination-on-the-basis-of-sex-in-education-programs-or-activities-receiving-federal) codified at 34 CFR § 106.30 (a) (2), "sexual harassment" is defined to include "(2) Unwelcome conduct determined by a reasonable person to be so

severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity."

106. There is no other provision of Title IX which might reasonably be applied to the Professor's conduct as described herein and the Professor does not reasonably fear complaints against him based on any other provisions of Title IX.

107. Plaintiff's conduct in offering to address non-binary students by their name or any traditional singular pronoun of their choice was admittedly "unwelcome" to the Complainant, but was not conduct that would be "determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal [educational] access."

108. Plaintiff reasonably fears that, absent a declaration from this Court that his conduct did not violate Title IX, he will be forced to defend himself from a succession of future Title IX complaints filed by students with SUU's Title IX Office even if he wins his current challenges to the school's enforcement of its own policies.

109. For each of the reasons above, Plaintiff respectfully seeks a Declaration from this Court that it does not violate Title IX if:

      a. a professor declines compliance with a requirement that the professor must use any of an *unlimited* number of potential pronouns that may be demanded by a self-declared non-binary student; nor if

      b. a professor declines a request to address a student by plural pronouns so long as the professor refrains from using any gender-based pronouns in addressing a student which that student has informed him the student finds offensive and further offers to address the student by the student's name in lieu of any of the student's preferred pronouns.

1

2

3

4

**SIXTH CAUSE OF ACTION**
**For Declaratory and Injunctive Relief on Grounds That Sanctions**
**Violated First and Fourteenth Amendments Because They Were Not**
**Limited to the Professor's In-Class Conduct**
**(42 U.S.C. § 1983)**

5

6

7

110.  Plaintiff hereby repeats and realleges each of the factual allegations set forth in this Complaint.

8

9

111.  SUU is a small college located in Cedar City Utah, population 36,000. The college has an enrollment of 11,000 (about one-third of the city.)

10

11

12

13

112.  Professor Bugg is the founder of what used to be the Neil Simon Festival, a summer stock theatre in the Cedar City area. The name was changed in 2018 to SimonFest Theatre Company. It is not sponsored by the university and its productions are performed at the Heritage Center Theatre in Cedar City.

14

15

113. Professor Bugg directs many of the productions occurring at the SimonFest Theatre Company.

16

17

114.  Many of the performers at the SimonFest Theatre Company come from the student body of the University.

18

19

115.  The Complainant herein actually auditioned for a role at the SimonFest Theater Company at one time.

20

21

22

116. It is not uncommon for students who are or have been in Plaintiff's classes to encounter him either:  (1) on campus but out of class; (2) in town; and/or (3) at the Heritage Center Theater.

23

24

25

26

117.  Defendants' order of sanctions does not limit its restrictions on Plaintiff's conduct to only those uses or non-uses of pronouns occurring when he is employed by SUU conducting classes. Rather, the circumstances where those restrictions apply are unlimited, including all settings on and off campus.

27

28

118. For this reason, the sanctions against Plaintiff are *at least* unconstitutionally overbroad, in violation of his Free Speech rights protected by the First and Fourteenth Amendments to the United States Constitution.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays for the following relief:**

1. A declaratory judgment stating that the University's interpretation of its Policies 5.27 and 5.60, as applied here to Plaintiff, constitute impermissible compelled expression in violation of the Free Speech and Due Process guarantees of the First and Fourteenth Amendments to the United States Constitution.

2. A declaratory judgment stating that the University's interpretation of its Policies 5.27 and 5.60, as applied here to Plaintiff, as well as its order of sanctions, are vague and overbroad, and violate the Free Speech and Due Process guarantees of the First and Fourteenth Amendments to the United States Constitution.

3. A declaratory judgment stating that the University's application of its Policies 5.27 and 5.60 violated Plaintiff's rights to free speech and equal protection in violation of the Free Speech, Due Process and Equal Protection guarantees of the First and Fourteenth Amendments to the United States Constitution.

4. A declaratory judgment that Plaintiff's conduct did not in fact violate SUU's written policies.

5. A declaratory judgment that it is not a violation of Title IX if a professor declines compliance with a requirement that the professor must use any of an unlimited number of potential pronouns that may be demanded by a student.

6. A declaratory judgment that it is not a violation of Title IX if a professor declines compliance with a request to address a student by plural pronouns, provided the professor makes a good faith effort to refrain from using any gender-based pronouns in addressing a student which that student has informed him the student

finds offensive and further offers to address the student by the student's name in lieu of any of the student's preferred pronouns.

7.  A declaratory judgment that, to the extent the order of sanctions mandated that Plaintiff engage in certain types of compelled expression even when not acting as an employee of SUU, it was *at least* overbroad, in violation of his First and Fourteenth Amendment rights to Free Speech.

8.  Interim and permanent injunctive relief preventing enforcement of any of the sanctions imposed on Plaintiff by the Defendant as described herein.

9.  Interim and permanent injunctive relief prohibiting Defendants from investigating or sanctioning Plaintiff on the basis of any future student complaints which are inconsistent with any other portions of the Court's declaratory judgment.

10.  Reasonable attorneys' fees as authorized by 42 U.S.C. § 1988.

11.  Such other and further relief as the Court may deem proper.

Dated:  August 29, 2022          Respectfully submitted,

Jerome H. Mooney
**WESTON, GARROU & MOONEY**

G. Randall Garrou
Of Counsel to
**WESTON, GARROU & MOONEY**

By:     / s /  Jerome H. Mooney_____
**Jerome H. Mooney**
Attorneys for Plaintiff