**INDEX TO EXHIBITS**

Exhibit A:    Sanctions Issued on May 3, 2022

Exhibit B:    Additional Sanction Imposed on June 14, 2022

Exhibit C:    SUU Policy 5.27

Exhibit D:    SUU Policy 5.60

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

**Sanctions Issued on May 3, 2022**

COMPLAINT



May 3, 2022

Jake Johnson
johnsonj@suu.edu

Jake:

On Friday, April 29, 2022, I received the findings of an SUU internal review and hearing process under SUU Policy 5.60 (informed by related definitions found in SUU Policy 5.27), *effective date* August 7, 2020 (copy enclosed; the Policy was later updated in 2021). The Hearing Officer, Steve Gordon, found that Professor Richard Bugg violated SUU's Policy 5.60, based on a preponderance of the evidence, in that he had engaged in harassment and discrimination on the basis of gender identity against a student. Mr. Gordon's Written Determination is enclosed with this letter, and this letter serves as part of that Written Determination as to the sanctions and remedies.

My role is as the Responsible University Administrator per page 28 of the Policy. Based on the facts and findings in that report, I decided on the disciplinary sanctions for the Respondent, Richard Bugg. In deciding the sanction(s), I have taken into consideration the factors listed within the Policy (See Page 29). I also have consulted with the designee within the Provost's Office, Bill Heyborne, Associate Provost. The goal of these sanctions is to end the prohibited conduct and prevent further violation of the Policy.

I am implementing the following sanctions:

1. Professor Richard Bugg submit to education about current views and opinions of English language and grammar experts and resources that using Gender-Neutral pronouns when referring to an individual is now considered grammatically correct.

2. This action and decision stand as a written warning regarding the use of preferred pronouns. If Professor Bugg continues to refuse to make a good faith effort to use preferred pronouns it will be considered an additional violation of policy 5.60 and 5.27 and may result in further sanctions up to and including termination.

3. If Professor Bugg refuses to make a good faith effort to use pronouns requested by SUU students, and as a result, students refuse to register for sections of classes he teaches, SUU will open additional sections of those classes and Professor Bugg's pay will be reduced to offset the amounts SUU must pay for the additional sections.

The following considerations were primary in my decision on these sanctions. The severity, persistence, and the pervasiveness of the misconduct. The impact of the misconduct on the complainant. The impact of the misconduct on the University community. The maintenance of a safe, nondiscriminatory, and respectful working and learning environment. I also note that if

23

Professor Bugg has concerns about the reasonableness of a future request by a student as related to use of preferred names or pronouns, he should direct those questions to me.

I also considered remedies for the Complainants in this case. It is my understanding that changes to coursework and other requests have already been considered and adjustments made through the Title IX Office and within the department. For that reason, no additional remedies are included in my decision.

Appeal bases, reasons, and timelines are set out beginning on page 31 of the Policy. The appeal officer in this case is SUU Provost Jon Anderson or his designee. Any party wanting to appeal must submit their intent to appeal within 10 calendar days after receipt of this letter and the enclosed Written Determination by the Hearing Officer to the Title IX Coordinator at title9@suu.edu.

Sincerely,

Kevin Price
Assistant Vice President, Human Resources
as Responsible University Administrator under SUU Policy 5.60

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**

**Additional Sanction Imposed on June 14, 2022**



*351 W University Blvd.*
*Cedar City, UT, 84720*
*(435) 586-7700*
*www.suu.edu*

June 14, 2022

Dear ██████████ and Richard Bugg,

I am writing in response to two appeals I received relating to case No. 20210032. My preparation for this response included a review of the original complaint, the investigation, the written determination and various appendices and other policies and documents included in the case file.

Currently the sanctions imposed on Richard Bugg regarding the incidents included in the case file are as follows:

1. *Professor Richard Bugg submit to education about current views and opinions of English language and grammar experts and resources that using Gender-Neutral pronouns when referring to an individual is now considered grammatically correct.*

2. *This action and decision stand as a written warning regarding the use of preferred pronouns. If Professor Bugg continues to refuse to make a good faith effort to use preferred pronouns it will be considered an additional violation of policy 5.60 and 5.27 and may result in further sanctions up to and including termination.*

3. *If Professor Bugg refuses to make a good faith effort to use pronouns requested by SUU students, and as a result, students refuse to register for sections of classes he teaches, SUU will open additional sections of those classes and Professor Bugg's pay will be reduced to offset the amounts SUU must pay for the additional sections.*

In response to these sanctions imposed by Kevin Price, Assistant Vice President for Human Resources and Responsible University Administrator, and the findings from the Hearing Officer, Steve Gordon, I received an appeal from Richard Bugg and another from ██████████.

One was received from Jerome H. Mooney of Weston, Garrou, and Mooney, who represents Richard Bugg dated May 26, 2022. A second appeal from ██████████ was received on May 25, 2022

The appeal from Jerome H. Mooney on behalf of Richard Bugg includes two requests, based on the foundation that the sanctions are clearly unreasonable. These appeal requests are: 1) a request to remove compelling Richard Bugg to use "plural pronouns for single individuals, something he finds improper not for religious reasons, but for political reasons" and 2) "the

sanctions create a "shadow class" at Professor Bugg's expense" as "[t]his is akin to fining him if he does not comply."

The first appeal assumes that the use of "they" (or similar variations of the pronoun) solely refers to a single individual. Regardless of the reasons (political, religious, etc…), this is an incorrect statement. The current use of the pronoun "they" includes referring to a "single person who's gender identity is nonbinary" as noted in Finding 39. This is further supported in findings 40-44, which incorporate current definitions of "they" from external, reliable sources.

The second ground for appeal suggests that creating a "shadow class" would be akin to fining Richard Bugg for his failure to deploy correct and current uses of the "they" pronoun. However, the appeal fails to recognize that the cost of a newly created section is a real cost and that the substantial disruption to the student learning and their course has already been demonstrated, such that University has already incurred this type of cost as a result of Richard Bugg's policy violation. This sanction is more akin to a cost recovery measure than a fine to Richard Bugg and is tied directly to his conduct that violated SUU policy.

Based on this logic, the first and second reasons for appealing these sanctions are denied. This decision is based on a current and correct usage of the pronoun "they" and cost recovery directly associated with creating shadow sections of courses as described.

██████████'s appeal requested that the implemented sanctions remain in force and that an additional sanction be added to include "focuses on protecting incoming students."

In response to ██████████'s appeal, I am adding an additional sanction to the three imposed by Kevin Price as outlined above. This sanction relates to the syllabus statement that was at issue in this case.

Each academic course includes learning outcomes that should be accomplished by students who complete the course. It seems there is significant inconsistency in the syllabus statements and policies related to various versions of the course under scrutiny. Some of these variations (as included in various testimonies) show significant differences in introductory syllabus statements. It seems reasonable that statements included in Richard Buggs syllabus should be similar to the syllabi statements included in other sections of the same course, or, at least be compliant with departmental guidance. In fact, one reading of Richard Bugg's introductory statement in the syllabus on political neutrality could read as if Richard was inviting political debate rather than focusing the language on the process of acting.

The guidance included in the department's undergraduate student handbook includes this statement: "Gender Identity Announcement: Students have the right to express their gender identity freely. The faculty are committed to creating a safe and positive learning environment for each and every student. If a student would prefer that we use a specific gender pronoun, please let faculty know during class introductions, office hours, or by email." (Undergraduate Student

Handbook SUU CPVA TDAA. Undergraduate Student Handbook. 2020 revision, P. 12, https://www.suu.edu/pva/ta/pdf/student-handbook-2020-revised.pdf)

Additional Sanction: *Professor Richard Bugg must review, and edit as necessary, his syllabus language to ensure it aligns with department guidance related to gender pronouns, and submit the syllabus for approval by the Department Chair two weeks before the start of the Fall 2022 semester.*

In summary, the three original sanctions as implemented by Kevin Price remain in force and a fourth sanction is added as noted above.

This decision brings the current issue to closure, as it is the final decision of the University.

Best regards,

Jon Anderson
Provost

Cc:    Dr. Brian Swanson, Department Chair
        Dr. Shauna Mendini, Dean

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT C**

**SUU Policy 5.27**



Policy # 5.27
Date Approved: 11/02/90
Date Amended: 08/26/10
Reviewed w/ No Changes:
Office of Responsibility: General Counsel/VP FA
Page 1 of 15

**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

---

SUBJECT:    NON-DISCRIMINATION / ANTI-HARASSMENT

---

## 5.27.1. INTRODUCTION:

Southern Utah University is committed to being a haven for the exchange of ideas between people with diverse backgrounds, opinions and ideologies.  In order to encourage this exchange, the University will endeavor to provide an environment free from discrimination and harassment. SUU complies with all state and federal laws regarding unlawful discrimination and harassment, which include, but are not limited to: Titles VI and VII of the Civil Rights Act of 1964; Title IX of the Educational Amendments of 1972; Sections 503 and 504 of the Rehabilitation Act of 1973; the Americans with Disabilities Act; Vietnam Era Veterans' Readjustment Assistance Act of 1974; Executive Order 11246 (as amended); the State of Utah Anti-Discrimination Act; and others as applicable.

## 5.27.2. PURPOSE:

    A.    To educate and provide a clearer understanding of legal and policy pronouncements prohibiting discrimination and harassment in the workplace or academic environment. This policy is not intended to address student-to-student peer discrimination or harassment.  Such conduct is governed by Policy 11.2 and 13.20.

    B.    To prevent, at the earliest possible opportunity, conduct that is inconsistent with these pronouncements.

    C.    To provide guidance in processing complaints alleging policy violations, investigating those allegations, and implementing disciplinary or corrective action as appropriate to the circumstances.

## 5.27.3. POLICY:

    A.    Discrimination.  Intentionally dealing with a person, either preferentially or detrimentally, because of his or her race, religion, national origin, color, sex (gender), age, disability, marital, veteran, sexual orientation, or other legally protected status, unless otherwise provided by statute[1], constitutes unlawful discrimination and is prohibited under this policy as well as state and federal law.

    B.    Harassment.  Intentional behavior directed at a person primarily because of his or her race, religion, national origin, color, sex (gender), age, disability, marital, veteran, sexual orientation, or other legally protected status constitutes harassment

---

[1] Veterans' hiring preference is defined in UCA 71-10-1, et. seq.

**Exhibit B - 1**



**SOUTHERN UTAH UNIVERSITY**
Policies and Procedures

Policy # 5.27
Date Approved: 11/02/90
Date Amended: 08/26/10
Reviewed w/ No Changes:
Office of Responsibility: General Counsel/VP FA
Page 2 of 15

SUBJECT:   NON-DISCRIMINATION / ANTI-HARASSMENT

and is prohibited under this policy, and may constitute illegal discrimination under state and federal law.

C.    Prohibited behavior or conduct includes the following:

1.    That which is demeaning, ridiculing, derisive, or coercive, on a severe or pervasive basis, resulting in a hostile or intimidating working or learning environment;

2.    That resulting in a tangible employment action being taken against an employee, a tangible work benefit being granted or denied an employee, or tangible effect in grading or academic advancement of a student.

    a.    Severe behavior refers to that which is repugnant, that which is extremely offensive to a reasonable person, or that which occurs with indifference to the ordinary sensibilities of a reasonable person.

    b.    Pervasive behavior refers to that which occurs repeatedly or in some pattern over a period of time, having the effect of interfering with a person's work or academic performance, or creating a hostile environment.  Pervasive behavior may be found in repeated verbal or other suggestive conduct that an ordinary person would view as vulgar, obscene, or intimating an interest in a relationship that would be unwelcome, unprofessional or create a conflict of interest in the employment or academic environment.

    c.    The more severe the behavior, the less pervasive it need be to meet this test, and the less severe the behavior, the more pervasive it need be to meet this test.  In the case of extreme and outrageous behavior, a single event may be deemed severe enough to meet this test.

    d.    A hostile environment includes, but is not limited to, one in which a reasonable person can establish that he or she is the target of conduct by a supervisor, co-worker, faculty member, staff member, volunteer, campus contractor, or student that is sufficiently severe or pervasive to alter the conditions of his or her employment or education.  A hostile environment generally assumes that the behavior is pervasive and directed at a victim who must work or



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.27**
**Date Approved: 11/02/90**
**Date Amended: 08/26/10**
**Reviewed w/ No Changes:**
**Office of Responsibility: General Counsel/VP FA**
**Page 3 of 15**

---

**SUBJECT:   NON-DISCRIMINATION / ANTI-HARASSMENT**

---

attend there, or is otherwise entitled or expected to be there for work or academic purposes.

D.   Behavior or conduct constituting sexual harassment is also prohibited under this policy as well as state and federal law.  Inappropriate conduct may be found between persons of different gender, the same gender, and in instances of gender stereotyping.

1.   Sexual harassment is defined as conduct of a sexual nature, physical or verbal, by an individual in an official University position when:

a.   Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment or academic standing; or,

b.   Submission to or rejection of such conduct by an individual is used as the basis for employment or academic decisions affecting that individual.

2.   Sexual harassment may also be found in conduct of a sexual nature that is sufficiently severe or pervasive, which has the effect of altering the conditions of an individual's employment, or creating an abusive or untenable academic or working environment.

a.   Severe conduct may include, but is not limited to, requests for sexual relations, physical touching, and other conduct that has the intent or effect of conveying an unwelcome sexual suggestion, particularly where such have been clearly declined and disapproval expressed.   However, "simple teasing," offhand comments, and isolated incidents (unless extremely serious) will not constitute an abusive or untenable environment.

b.   Intentional physical contact with a part of the body that is intimate or gender specific is, by its nature, severe, and may also constitute the crime of sexual battery or assault under state law. This conduct is prohibited; and need not be pervasive to constitute a violation under this policy.  Anyone believing him/herself to be a victim of such conduct is encouraged to file a complaint under this policy, and encouraged to contact Campus Police.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.27**
**Date Approved: 11/02/90**
**Date Amended: 08/26/10**
**Reviewed w/ No Changes:**
**Office of Responsibility: General Counsel/VP FA**
**Page 4 of 15**

---

**SUBJECT:    NON-DISCRIMINATION / ANTI-HARASSMENT**

---

E.   If there is no apparent threat to, or reasonable apprehension for personal safety, a person experiencing conduct he/she believes to constitute discrimination, harassment, or sexual harassment is encouraged to confront the alleged violator and clearly communicate his/her disapproval of such behavior, indicating that it is unwelcome and/or inappropriate, and that it will not be tolerated in the future. This effort is encouraged as a means of stopping and preventing such behavior in the future. It is also recommended that such a confrontation be documented for use in support of any future complaint or investigation.

F.   Violators will be subject to discipline under this policy, guided but not controlled by other University policies, and may, where the conduct warrants, be referred for criminal prosecution. Discipline will be determined consistent with the severity and overall nature of the behavior and need not follow any "progressive discipline" format. Conduct found to be substantially severe and pervasive may result in termination from employment or other disciplinary or corrective action designed to prevent future repetitions. The imposition of disciplinary and/or corrective action may be considered as follows:

1.   In the case of a faculty member, a violation is considered to be highly unprofessional and discipline will be guided by Policy 6.28, Section VI;

2.   In the case of a classified or professional staff employee:

a.   In probationary status, the alleged offender will be dismissed, unless that is deemed inappropriate by his/her Vice President, who will specify the appropriate discipline;

b.   Not in probationary status, discipline will be guided by Policy 8.3.5, Section III., B.

3.   In the case of a campus volunteer, the volunteer will not be recalled to service. Reported incidents and any documentation will be filed with campus police and subject to state and federal laws.

4.   In the case of an on-campus contractor, the job supervisor will be notified with the expectation that the contractor's alleged offending employee(s) or sub-contractor's alleged offending employee(s) will be disciplined and re-assigned away from the on-campus job site. A report may also be filed with the campus police, and the alleged offender dealt with under applicable state and/or federal laws.



**SOUTHERN UTAH UNIVERSITY**
Policies and Procedures

Policy # 5.27
Date Approved: 11/02/90
Date Amended: 08/26/10
Reviewed w/ No Changes:
Office of Responsibility: General Counsel/VP FA
Page 5 of 15

**SUBJECT:    NON-DISCRIMINATION / ANTI-HARASSMENT**

5.    In the case of a student violation, (e.g. proposing or intimating a sexual relationship with a faculty member, staff member or campus volunteer), the student will be referred to the Dean of Students and the conduct will be addressed under Policies 11.2 and 13.20.

6.    In the case of an on-campus visitor, reported incidents and any documentation should be filed with campus police and the alleged offender dealt with under applicable state and/or federal laws.

G.    A faculty member, staff member, or campus volunteer will be subject to disciplinary or corrective action for harassment and/or sexual harassment of another employee or of a student, even if that harassment occurs outside of scheduled work time, away from regular work location, or off campus.

**5.27.4.    BURDEN OF PROOF:**

A.    The accused is presumed to be innocent until it is proven by a preponderance of the information obtained that he/she has violated this policy.

B.    Anyone asserting "consent," as excusing or mitigating an accusation of behavior otherwise prohibited under this policy, will bear the burden of rebutting a strong presumption to the contrary.  The assertion of consent would mean that the behavior was mutually agreeable to the involved parties.  The presumption must ordinarily be rebutted by a preponderance of information showing affirmative statements or conduct communicating consent.  Consent will not ordinarily be inferred from a party's or co-worker's tolerance, or immediate failure to confront a person or persons engaged in prohibited conduct.

1.    The basis for the presumption includes, but is not limited to, the following:

a.    The behavior is prohibited by this policy.

b.    The behavior has become the subject of a complaint.

c.    Parties are often in an unequal position where one is in a position of power or authority and the other is a subordinate or student.

d.    Behavior between two persons that is consensual can form the basis for a third-party complaint alleging that the behavior resulted in less favorable treatment of the non-consenting or non-participating third party.



Policy # 5.27
Date Approved: 11/02/90
Date Amended: 08/26/10
Reviewed w/ No Changes:
Office of Responsibility: General Counsel/VP FA
Page 6 of 15

**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

---

**SUBJECT:    NON-DISCRIMINATION / ANTI-HARASSMENT**

---

2.    Where the presumption is rebutted, and consent is shown:

    a.    The consenting parties may be subject to discipline for having consensually engaged in prohibited conduct.

    b.    Any discipline warranted by the prohibited conduct may, but need not be, mitigated by the consent.

    c.    A third-party complaint resulting from the consensual conduct will be considered to be equally asserted against all consenting individuals.

C.

1.    Because of the inherent differential in authority, Southern Utah University prohibits any faculty from engaging in a romantic and/or sexual relationship with any undergraduate or graduate student currently enrolled at the university when one participant has direct evaluative or supervisory authority over the other because such relationships create an inherent conflict of interest. (See Policy 6.28. IV.J.)  When such cases arise, the individual in the evaluative or supervisory position has an obligation to disclose the relationship to his or her administrative superior and to cooperate in removing himself or herself from any such evaluative or supervisory activity in order to eliminate the existing or potential conflict of interest, or the likelihood of a complaint being filed under this policy. Exceptions to this prohibition include legally recognized or recognizable marriages.

2.    Consensual relationships between employees in a supervisor / subordinate relationship are also prohibited.  Persons wishing to pursue such a relationship should seek a transfer to another campus department so as to eliminate or minimize the possibility of a complaint or conflict of interest.

3.    Consensual relationships between persons in a position of lateral or equal authority are discouraged as such may form the basis for a third-party complaint where co-workers observe conduct that would otherwise be prohibited under this policy, and which may be unproductive and inappropriate in the workplace.

**5.27.5. Complaint Procedure.**



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.27
Date Approved: 11/02/90
Date Amended: 08/26/10
Reviewed w/ No Changes:
Office of Responsibility: General Counsel/VP FA
Page 7 of 15

SUBJECT:   NON-DISCRIMINATION / ANTI-HARASSMENT

Anyone claiming harm from prohibited conduct who seeks investigation and remediation through on-campus procedures, is encouraged to file a complaint and engage in the processes provided below.  The University will make reasonable efforts to ensure that the process is free from bias, collusion, intimidation or retaliation.

A.   Complaints should be brought as soon as possible, and must be filed within four (4) months of the most recent violation.  Where the interests of fairness require, this time limit may be extended with the consensus of the Human Resources Director, or designate ("Director"), the responsible Vice President ("Vice President") and University Counsel.

**A person claiming discrimination or sexual harassment who desires state or federal review, must initiate a "Request for Agency Action" with the Utah Anti-Discrimination and Labor Division ("UALD") within 180 days; or a complaint with the Equal Employment Opportunity Commission ("EEOC") within 300 days from the from the date of last harm (not from the date that the complaint to the University is filed or resolved).**

B.   An individual who experiences prohibited conduct; or an individual who is observing or otherwise aware of such prohibited conduct is encouraged to:

1.   Document the occurrence;

2.   Identify any witness or witnesses;

3.   Confront the offender and indicate disapproval of the conduct; and/or,

4.   Continue to report to work, or other standard venue, unless the circumstances reasonably indicate an apparent threat to, or reasonable apprehension for personal safety.

C.   An individual faculty member, staff member, administrator, student, campus volunteer, or third-party observer may orally assert, or file a written complaint alleging that prohibited discrimination, harassment or sexual harassment has occurred.  This may be done by an alleged victim or on behalf of an alleged victim by a campus administrator, as circumstances dictate.

D.   A complaint may be filed with the Human Resources Director, with the alleged victim's immediate supervisor, or with anyone in an administrative position below the Vice President responsible for the department in which the alleged



**SOUTHERN UTAH UNIVERSITY**
Policies and Procedures

**Policy # 5.27**
**Date Approved: 11/02/90**
**Date Amended: 08/26/10**
**Reviewed w/ No Changes:**
**Office of Responsibility: General Counsel/VP FA**
**Page 8 of 15**

---

**SUBJECT:    NON-DISCRIMINATION / ANTI-HARASSMENT**

---

violator is employed.  Once received, all complaints must be forwarded to the Director for investigation and recommendation back to the responsible Vice President for final disciplinary, corrective or other appropriate action.

E.      Complaints will be handled with such confidentiality as may be reasonably available under the circumstances.

        **Absolute confidentiality is not and cannot be guaranteed.**

F.      Any supervisor who has knowledge of prohibited conduct is expected to take immediate action intended to prevent further violation, document the action, and provide a report to the Human Resource Office.  This report may either support or constitute a complaint as circumstances dictate.

G.      Upon receiving a complaint or report of alleged violation:

        1.      Where the Director, on initial review, finds that the alleged violation meets the minimum requirements of Section 5.27.3, above, an investigation will be conducted as provided in Section 5.27.6, below.  Any violation found will be resolved in accordance with this policy; or,

        2.      Where the Director, on initial review, finds the complaint or information insufficient to pursue an investigation (e.g. conduct not pervasive; but inappropriate), the Director will schedule a meeting with the complainant, the supervisor of the alleged violator, Legal Counsel and/or others as appropriate to communicate this determination and to consider any remedial action as may be appropriate.

H.      Should a complaint involve the Director, a Vice President or other person designated by this policy to make or implement a recommendation or decision, the University President will temporarily appoint a substitute for purposes of processing, investigating and resolving the complaint.

**5.27.6. INVESTIGATIVE PROCEDURE:**

A.      There will be a minimum of nine (9) trained investigators selected by the Director of Human Resources from faculty and staff.  These investigators will be trained in appropriate investigation methods.  They will be composed into investigation



**SOUTHERN UTAH UNIVERSITY**
Policies and Procedures

Policy # 5.27
Date Approved: 11/02/90
Date Amended: 08/26/10
Reviewed w/ No Changes:
Office of Responsibility: General Counsel/VP FA
Page 9 of 15

---

**SUBJECT:   NON-DISCRIMINATION / ANTI-HARASSMENT**

---

teams of three: One female, one male and a third assigned at random ("Investigation Team"). The Investigation Team will not serve in an advocate role; but rather, as neutral, impartial investigators. If during the course of their investigation a conflict of interest becomes apparent, or is asserted by any party relative to any member of the Investigation Team, it will be brought to the attention of the Director of Human Resources who can consider substitution within the Investigative Team, or other appropriate action.

B.   The complainant may make specific requests relating to the investigation process and the Investigation Team. The Investigation Team will attempt to comply with these requests, but is not bound to do so. The Investigation Team – in consultation with other appropriate individuals, as necessary – may take whatever action they see as necessary and appropriate to determine the accuracy or validity of the allegations and make such recommendations they think reasonable to resolve the complaint.

C.   Where a complaint is investigated:

1.   The Investigation Team is authorized to ask questions of the complainant, the victim (if not the complainant), the accused, and all others having information, as their names become known to the investigators in the course of their investigation. Investigators will have authority and discretion to ask such questions and obtain such documents and other information as the circumstances and details provided may require. If the Investigation Team discovers information to substantiate violations not asserted in the complaint, or other victims not otherwise known to the complainant, the investigators will notify the Director who has authority and discretion to construe the complaint to best prevent future violations and achieve the greatest fairness in the circumstances. Instances discovered to be outside the four month time frame in Section 5.27.4(1), above, must be evaluated for inclusion or exclusion, as provided under that section.

2.   The complainant, the victim (if not the complainant), the accused and others interviewed may request confidentiality or anonymity, and such request(s) will generally be honored by the Investigation Team to the practical extent possible, unless in their judgment such is not in the best interest of the investigation, the University, other parties; or, is fundamentally unfair to the accused unless it is otherwise prohibited or affected by applicable law.



**Policy # 5.27**
**Date Approved: 11/02/90**
**Date Amended: 08/26/10**
**Reviewed w/ No Changes:**
**Office of Responsibility: General Counsel/VP FA**
**Page 10 of 15**

**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

---

SUBJECT:    NON-DISCRIMINATION / ANTI-HARASSMENT

---

3.    Once referred for investigation, the complaint will be investigated as promptly as possible in the circumstances, and recommendations will be forwarded to the Director of Human Resources - ideally within one month.

4.    Unless the Investigation Team finds the complaint to be groundless prior to interviewing the accused, the accused must be presented with a copy of the complaint (or an appropriate summary, as confidentiality and anonymity may require) and must be allowed the opportunity to respond, explain or refute its allegations, or other information provided within 14 calendar days, before the investigation can be concluded.

5.    In conducting their investigation, the Investigation Team will make reasonable efforts to preserve the dignity, respect and reputation of all parties and others involved.

6.    Once the accused is made aware of the complaint, he/she will not knowingly communicate with the complainant (and the alleged victim if not the complainant) regarding the alleged violation(s) and should avoid any conduct which could be construed as retaliatory.  Proof of retaliation may result in additional disciplinary action as provided below.

D.    Results of Investigation

1.    Upon concluding its investigation, if the Investigation Team, by majority, finds:

a.    That the allegations have been supported by a preponderance of the information; or,

b.    That the accusations were made falsely, as described in 5.27.8, or as a matter of vindictive or retaliatory conduct, as described in 5.27.7, below; or,

c.    That the accusations are not supported by a preponderance of the information;

Their written findings and recommendations will be submitted to the Director of Human Resources and the accused.

2.    Upon receiving the findings and recommendations of the Investigation Team, the Director of Human Resources will forward



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.27**
**Date Approved: 11/02/90**
**Date Amended: 08/26/10**
**Reviewed w/ No Changes:**
**Office of Responsibility: General Counsel/VP FA**
**Page 11 of 15**

---

**SUBJECT:    NON-DISCRIMINATION / ANTI-HARASSMENT**

---

these findings and recommendations to the appropriate Vice President.

Where:

a.    The findings indicate a policy violation by a tenured faculty member, professional-in-residence (during the term of contract), or non-probationary staff member,

    1.    The Vice President having line authority over the accused will meet with him/her to review the findings and proposed disciplinary or corrective action.

    2.    The accused will have the opportunity to respond and be heard in this meeting.

    3.    The accused may have a representative accompany him/her at this meeting for advice and support – the representative will not speak on behalf of the accused, unless permitted by the Vice President.

    4.    The Vice President will meet separately with the complainant for the same purpose, and may (in his/her discretion) meet with the victim, if other than the complainant, to summarize the findings and disciplinary or other corrective action.  The complainant may also have a representative at this meeting.

    5.    After hearing the accused and the complainant, the Vice President may confer with the Investigation Team, or others, if necessary, to be fully advised before finalizing and imposing disciplinary or other corrective action.

    6.    The affected faculty or staff member will be notified of final disciplinary or corrective action in writing, with a copy to his/her personnel file.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.27
Date Approved: 11/02/90
Date Amended: 08/26/10
Reviewed w/ No Changes:
Office of Responsibility: General Counsel/VP FA
Page 12 of 15

SUBJECT:    NON-DISCRIMINATION / ANTI-HARASSMENT

b.   The findings indicate a policy violation by an adjunct professor, a tenure-track professor, visiting faculty, probationary staff member, or campus volunteer,

7.   The Vice President may dismiss from employment or impose corrective action on that person without a review meeting or other process.

8.   The affected person will be notified of final action in writing, with a copy to his/her personnel file.  A campus volunteer will be notified by best available means.

c.   The findings indicate that the accusations were made falsely or as vindictive or retaliatory conduct –

1.   By a faculty member, staff member, or campus volunteer,

i.   The Vice President over the accused (where he/she does not have line authority over the other party) will advise the Vice President over the complainant (or victim, if other than the complainant).  They will review the findings and recommendations.

ii.   The appropriate Vice President will then meet with the parties involved and will finalize and impose appropriate disciplinary or other corrective action.

iii.   The affected person will be notified of disciplinary or other corrective action in writing, with a copy to his/her personnel file.

iv.   A campus volunteer will be notified by best available means.

2.   By a student, the Dean of Students will be notified,



**Policy # 5.27**
**Date Approved: 11/02/90**
**Date Amended: 08/26/10**
**Reviewed w/ No Changes:**
**Office of Responsibility: General Counsel/VP FA**
**Page 13 of 15**

**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

---

SUBJECT:   NON-DISCRIMINATION / ANTI-HARASSMENT

---

and the conduct will be addressed under Policies 11.2 and 13.20.

9.    In the process of investigating a policy violation, if an Investigation Team finds what they believe to be evidence of criminal conduct, their information will be forwarded to the Director of Human Resources and Campus Legal Counsel for review and referral to the County Attorney or Attorney General's Office as appropriate.  These offices have independent discretion to pursue further review, investigation and prosecution, as they find appropriate.  Any policy violation will be addressed under paragraphs A. and B., above.

10.   If the Investigation Team determines that the allegations were not supported, written findings to that effect will be provided to the Director of Human Resources and the complaint dismissed.

11.   **The meeting with the Vice President, specified above, providing the accused violator with the opportunity to be heard on the findings and proposed disciplinary or other corrective action, constitutes and fulfills all legal and policy requirements for faculty/staff due process on the complaint.**

**5.27.7. RETALIATION:**

A.    No one may retaliate ("retaliation") against any faculty member, staff member, student or campus volunteer that initiates a complaint or participates in the resolution of a complaint made under this policy.

B.    Retaliation may include, but is not limited to:

1.    Open hostility to any complainant, participant or others involved;

2.    Exclusion or ostracism of the complainant, participant or others;

3.    Creation of, or the continued existence of, a hostile work environment;

4.    Special attention to or assignment of the complainant, participant or others to demeaning duties not otherwise performed in the ordinary course of routine employment or in the ordinary course of established course study as provided by or reasonably inferred from the syllabus;



**Policy # 5.27**
**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**
**Date Approved: 11/02/90**
**Date Amended: 08/26/10**
**Reviewed w/ No Changes:**
**Office of Responsibility: General Counsel/VP FA**
**Page 14 of 15**

SUBJECT:   NON-DISCRIMINATION / ANTI-HARASSMENT

---

12.   Tokenism or patronizing behavior;

13.   Discriminatory treatment;

14.   Subtle harassment; or

15.   Imposing unreasonable time restrictions on employees in preparing complaints or compiling information related to prohibited conduct.

C.   Any act of retaliation toward the complainant, witnesses or others involved in the investigation shall be subject to additional corrective or disciplinary action as provided in Section 5.27.6 (D) (2) (c), above.

**5.27.8. FALSE ACCUSATIONS**

A.   Accusations of conduct prohibited under this policy can have long-term effects on the professional reputation and potential for career advancement of anyone so accused.

B.   Recognizing this, anyone making knowingly false or materially inaccurate accusation(s) of prohibited conduct, if so determined in the course of evaluating a complaint, will be subject to disciplinary or corrective action appropriate to the circumstances as provided in Section 5.27.6 (D) (2) (c), above.  Discipline may include termination from employment or expulsion from the University.

**5.27.9. RECORDS**

A.   All records of complaints, investigations, findings and recommendations considered or accumulated under this policy ["records"] are classified as "PROTECTED" under the Utah Government Records Access and Management Act ("GRAMA").

B.   Records will be maintained and stored in the Human Resources Office.  Removal or disposal of records in the protected file may only be done with the approval of the University President, and only after minimum retention time (as may be provided by state law or University practice) have been met.  In any case, records will be kept for a minimum of three years from the resolution of the complaint or investigative proceeding.

C.   Supervisors will not keep separate files related to complaints of prohibited conduct.



<table>
<tr><td></td><td style="text-align:center"><strong>SOUTHERN UTAH UNIVERSITY</strong><br><strong>Policies and Procedures</strong></td><td style="text-align:right"><strong>Policy # 5.27</strong><br><strong>Date Approved: 11/02/90</strong><br><strong>Date Amended: 08/26/10</strong><br><strong>Reviewed w/ No Changes:</strong><br><strong>Office of Responsibility: General Counsel/VP FA</strong><br><strong>Page 15 of 15</strong></td></tr>
</table>

**SUBJECT:    NON-DISCRIMINATION / ANTI-HARASSMENT**

    D.    Information contained in the protected file will only be released by the University President or the Director of Human Resources, when in compliance with the requirements of applicable law, after consultation with Campus Legal Counsel.

    E.    Participants in any investigation or implementation of disciplinary or other corrective or remedial action shall treat all information as protected and confidential.

    F.    Final disposition of a complaint will be communicated to the accused violator, the responsible Vice President, the complainant, and at the discretion of the Vice President, the victim(s), if other than the complainant.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT D**

**SUU Policy 5.60**



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 1 of 32

---

**SUBJECT:   SEXUAL MISCONDUCT**

---

I.      PURPOSE & POLICY STATEMENT

This policy defines and prohibits discrimination on the basis of sex, including sexual harassment, in education programs and activities; details how to report a violation of this policy; describes Southern Utah University resources and supportive measures to protect those involved in the process; and outlines investigation, disciplinary, and due process procedures for addressing reported violations of this policy. This policy applies to all persons who are (1) employed by, attending, or affiliated with the University; (2) participating in any University program or activity, including but not limited to trustees, administrators, faculty, staff, students, independent contractors, volunteers, and guests; and/or (3) visiting campus or any property owned or leased by the University.

II.     REFERENCES

Americans with Disabilities Act (ADA) (as amended)

Campus Sexual Violence Elimination Act (SaVE)—Reauthorization of the Violence against Women Act of 2013 (VAWA)

Family Educational Rights and Privacy Act (FERPA)

Heath Insurance Portability and Accountability Act (HIPAA)

Jeanne Clery Disclosure of Campus Security Police and Campus Crime Statistics Act (*Clery Act*)

Title VII of the Civil Rights Act of 1964 (Title VII)

Title IX of the Higher Education Amendments Act of 1972 (Title IX)

Utah Code § 53B-27-101 et seq. Campus Advocate Confidentiality Amendments

Utah Code § 53B-28-302 Code of Conduct Violation-Report of Sexual Violence

Utah Code § 53B-28-304 Criminal Retaliation Against a Victim or a Witness

Utah Code § 63G-2 Government Records Access and Management Act (GRAMA)

Utah Code § 63G-7-301 Waivers of Immunity-Exceptions

Utah Code § 76-5-404.1 Sexual Abuse of a Child

Utah Code § 77-36 Cohabitant Abuse Procedures Act

Utah Code § 77-38 Rights of Crime Victims Act



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 2 of 32

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

Utah Board of Higher Education Policy R256 Student Disciplinary Processes

Utah Board of Higher Education Policy R842 Restrictions on Faculty/Staff Relationships with Student

III.        SCOPE OF THE POLICY

This policy applies to all employees of the University and any persons participating, or attempting to participate, in any University Program or Activity. To the extent that any other University policies address sex discrimination, sexual harassment, or retaliation, as defined in this policy, this policy and its procedures govern.

IV.        DEFINITIONS

A.    **Actual knowledge:** Notice of sexual harassment or allegations of sexual harassment to the Title IX Coordinator or any official of the University who has authority to institute corrective measures on behalf of the University. Imputation of knowledge based solely on vicarious liability or constructive notice is insufficient to constitute actual knowledge. This standard is not met when the only official of the University with actual knowledge is the respondent. The mere ability or obligation to report sexual harassment or to inform a student about how to report sexual harassment, or having been trained to do so, does not qualify an individual as one who has authority to institute corrective measures on behalf of the University.

B.    **Complainant, victim, or alleged victim**: An individual who is alleged to be the victim of conduct that could constitute sexual harassment.

C.    **Consent:** Consent to engage in a sexual encounter must be given by all participating parties; must be clear, knowing, and voluntary; and may be given only by someone who is 18 years of age or older and is not mentally and/or physically incapacitated. Consent is active, not passive. Consent requires an affirmatively communicated willingness through words and/or actions to participate in sexual activity. Silence, in and of itself, may not be interpreted as consent.

D.    **Dating Violence:** as defined at 34 U.S.C. 12291(a)(10), dating violence means violence committed by a person (A) who is or has been in a social relationship of a romantic or intimate nature with the victim; and (B) where the existence of such



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 3 of 32

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

a relationship shall be determined based on a consideration of the following factors:

1.    The length of the relationship.

2.    The type of relationship.

3.    The frequency of interaction between the persons involved in the relationship.

E.    **Discrimination**: For purposes of this policy, adverse action towards University employees or students in the terms or conditions of employment; University admission or education; access to University programs, services, or activities; or other University benefits or services, on the basis of their inclusion or perceived inclusion (in the case of sexual orientation, gender identity, or gender expression) in the protected classes of sex, pregnancy, pregnancy-related conditions, sexual orientation, gender identity, or gender expression that has the effect of denying or limiting participation in a University program or activity.

F.    **Domestic Violence:** as defined in 34 U.S.C. 12291(a)(8), domestic violence includes felony or misdemeanor crimes of violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction receiving grant monies, or by any other person against an adult or youth (ages 11-24) victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction.

G.    **Formal Complaint:** A document filed by a complainant or signed by the Title IX Coordinator alleging sexual harassment against a respondent and requesting that the University investigate the allegation of sexual harassment. At the time of filing a formal complaint, a complainant must be participating in or attempting to participate in the education program or activity of the University with which the formal complaint is filed. A formal complaint may be filed with the Title IX Coordinator in person, by mail, or by electronic mail, by using the contact information required to be listed for the Title IX Coordinator, and by any additional method designated by the University. As used in this paragraph, the phrase "document filed by a complainant" means a document or electronic



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 4 of 32

---

SUBJECT:    SEXUAL MISCONDUCT

---

submission (such as by electronic mail or through an online portal provided for this purpose by the University) that contains the complainant's physical or digital signature, or otherwise indicates that the complainant is the person filing the formal complaint.

H.   **Incapacitation:** An individual who is incapacitated cannot give consent to engage in a sexual encounter. Incapacitation is defined as the physical and/or mental inability to make informed, rational judgments. Factors that could be indications of incapacitation include but are not limited to mental or physical disability; lack of sleep; alcohol; illegal, date-rape, or prescription drug use; unconsciousness; blackout; or involuntary physical restraint. Being intoxicated by drugs or alcohol does not diminish one's responsibility to obtain consent. The factors to be considered when determining whether consent was given include whether the accused knew, or whether a reasonable person should have known, that the complainant was incapacitated.

I.   **Party:** Complainant or respondent.

J.   **Preponderance of evidence:** The evidentiary standard used during a sexual misconduct investigation/review to determine if the allegations occurred and if a University policy violation has occurred. Preponderance of evidence means it is more likely than not, or more than 50 percent in favor, that the misconduct occurred as alleged.

K.   **Respondent:** Respondent means an individual who has been reported to be the perpetrator of conduct that could constitute sexual harassment.

L.   **Retaliation:** An action, performed directly or through others, that is aimed to dissuade a reasonable person from engaging in a protected activity or is done in retribution for engaging in a protected activity. Action in response to a protected activity is not retaliatory unless (i) it has a materially adverse effect on the working, academic, or other University-related environment of an individual and (ii) it would not have occurred in the absence of (but for) the protected activity. Examples of protected activities include reporting (internally or externally) a complaint of sexual harassment in good faith, assisting others in making such a report, or honestly participating as an investigator, witness, decision maker, or otherwise assisting, in an investigation or proceeding related to suspected sexual harassment.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 5 of 32

---

SUBJECT:     **SEXUAL MISCONDUCT**

---

M.    **Sexual assault:** as defined at 20 U.S.C. 1092(f)(6)(A)(v) and the uniform crime reporting system of the Federal Bureau of Investigation, sexual assault means any sexual act directed against another person, without the consent of the victim, including instances where the victim is incapable of giving consent; also unlawful sexual intercourse, including the following:

1.    Rape—Any penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent

2.    Sodomy—Oral or anal sexual intercourse with another person, without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity

3.    Sexual Assault With An Object—To use an object or instrument to unlawfully penetrate, however slightly, the genital or anal opening of the body of another person, without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity

4.    Fondling—The touching of the private body parts of another person for the purpose of sexual gratification without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity

5.    Incest—Nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by Utah law. See Utah Code section 76-7-102.

6.    Statutory Rape—Nonforcible sexual intercourse with a person who is under Utah's statutory age of consent. See Utah Code section 76-5-401 et seq.

N.    **Sexual harassment:** conduct on the basis of sex that satisfies one or more of the following: (1) An employee of the University conditioning the provision of an aid, benefit, or service of the University on an individual's participation in

**Exhibit A - 5**



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 6 of 32

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

unwelcome sexual conduct; (2) Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to University education program or activity; or (3) "Sexual assault" as defined in 20 U.S.C. 1092(f)(6)(A)(v), "dating violence" as defined in 34 U.S.C. 12291(a)(10), "domestic violence" as defined in 34 U.S.C. 12291(a)(8), or "stalking" as defined in 34 U.S.C. 12291(a)(30).

O.   **Sexual Assault Response Team (SART):** A committee of trained interdepartmental University staff working collaboratively to provide services for the University community by offering specialized sexual assault intervention services, including but not limited to ensuring the immediate safety of the alleged victim, taking interim measures as necessary, and remediating the effects of substantiated sexual misconduct.

P.   **Stalking:** as defined at 34 U.S.C. 12291(a)(30), stalking means engaging in a course of conduct directed at a specific person that would cause a reasonable person to (A) fear for their safety or the safety of others; or (B) suffer substantial emotional distress.

Q.   **Supportive Measures:** Non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the complainant or the respondent before or after the filing of a formal complaint or where no formal complaint has been filed. Such measures are designed to restore or preserve equal access to the University's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the University's educational environment, or deter sexual harassment. Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures. The University must maintain as confidential any supportive measures provided to the complainant or respondent, to the extent that maintaining such confidentiality would not impair the ability of the University to provide the supportive measures. The Title IX Coordinator is responsible for coordinating the effective implementation of supportive measures.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 7 of 32

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

R.    **Title IX Coordinator:** The University must designate and authorize at least one employee to coordinate its efforts to comply with its responsibilities under Title 34 of the Code of Federal Regulations, part 106, which employee must be referred to as the "Title IX Coordinator."

S.    **University community members:** All persons employed by or affiliated with the University in any way and persons participating in any University program or activity, including but not limited to trustees, advisory board members, administrators, faculty, staff, students, independent contractors, volunteers, and guests or visitors to any University campus or any property owned or leased by the University.

V.    PROHIBITED CONDUCT

Sex Discrimination, Sexual Harassment, and Retaliation Prohibited.

The University does not discriminate on the basis of sex in the education program or activity that it operates, as required by Title IX and 34 CFR part 106. The requirement not to discriminate in education programs or activities extends to admission and employment. Inquiries about the application of Title IX and its regulations to University programs or activities may be referred to the Title IX Coordinator.

The University prohibits sex discrimination, sexual harassment, and retaliation as defined in this policy. Violations of this policy include but are not limited to acts or attempts of dating and relationship violence; domestic violence; discrimination based on sex, pregnancy, pregnancy-related conditions, sexual orientation, gender identity, or gender expression; hostile environment based on sex, pregnancy, pregnancy-related conditions, sexual orientation, gender identity, or gender expression (including intimidation and hazing/bullying); sexual harassment; sexual assault (including nonconsensual sexual contact or nonconsensual sexual intercourse); sexual exploitation (including engaging in sexual trafficking); and stalking.

A.    **Consent:** All participants in the sexual activity are responsible for ensuring that they have the consent of all involved to engage in sexual activity. Any individual who engages in sexual activity without receiving clear, knowing, and voluntary consent, or in which one of the parties withdraws consent at any point but is forced to participate, has violated this policy. Sexual activity with someone



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 8 of 32**

---

SUBJECT:   **SEXUAL MISCONDUCT**

---

deemed unable to grant clear, knowing, and voluntary consent constitutes a violation of this policy. This includes, but is not limited to, individuals who are:

1. Mentally and/or physically incapacitated for any reason (such as by mental or physical disability; lack of sleep; alcohol; illegal, date-rape, or prescription drug use; unconsciousness; blackout; or involuntary physical restraint);

2. Under the age of 18; or

3. Forced to give consent in any way, including but not limited to by coercion,

4. intimidation, duress, deception, threats, implied threats, and/or physical force.

5. Consent to any one form of sexual activity does not automatically imply consent to any other forms of sexual activity. Past consent to sexual activity does not imply ongoing future consent. The current or past existence of a relationship does not imply consent. Whether an individual has taken advantage of a position of authority over an alleged victim may be a factor in determining consent or coercion.

B. **Sexual Conduct with Subordinate Employees or Students**: Employees shall not engage in sexual conduct with subordinate students or employees unless there has been proper disclosure and potential for abuse of power has been removed. Subordinate students and employees cannot consent, as defined in this policy, to sexual conduct amid the potential for abuse of power.  The purpose of this restriction is to prohibit the abuse of power by employees and the exploitation of subordinate students or employees.

1. Subordinate students are University students or applicants whose educational opportunities could be adversely impacted by employees.

2. For purposes of this section, sexual conduct is any sexual relationship or sharing any sexually explicit or lewd communication, image, or photograph. Sharing sexually explicit or lewd communication, image, or photograph does not include any communication, image, or photograph that faculty shares with students as part of a legitimate academic exercise,



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 9 of 32

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

such as pedagogical requirements for specific classes such as health, science, art, behavioral science, etc.

3.    For purposes of this section, educational opportunities include admission, receipt of financial aid, assessment of academic performance, or placement in academic opportunities such as internships, assistantships, and graduation.

4.    All employees engaging or intending to engage in sexual conduct with a subordinate student or employee shall immediately disclose the relationship to their direct supervisors and the Title IX Coordinator, or be subject to disciplinary action, up to and including termination. Supervisors who receive such reports or who otherwise become aware of such relationships shall promptly report the relationship to the Title IX Coordinator, who shall work with the relevant parties to remove the subordinate relationship to ensure compliance with Utah Code § 63G-7-301 and this policy. If the subordinate relationship cannot be removed or otherwise appropriately managed, the employee shall be subject to discipline, up to and including termination.

C.    **Retaliation Prohibited:** Neither the University nor any member of the University community may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX or this policy, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this policy.

1.    Intimidation, threats, coercion, or discrimination, including charges against an individual for policy violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by Title IX or this part, constitutes retaliation.

2.    Any retaliatory threat or act of violence against victims or witnesses of sexual violence, moreover, is a third-degree felony under Utah Code § 53B-28-304 and may be subject to criminal prosecution.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 10 of 32**

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

3.    Complaints alleging retaliation may be filed according to the grievance procedures for sex discrimination under this policy.

D.    Nothing in this policy shall be interpreted as diminishing any party's rights protected under the United States Constitution or employee rights under Title VII of the Civil Rights Act of 1964 to be free from discrimination on the basis of race, color, religion, sex, and national origin.

VI.    NOTIFICATION

The University must notify applicants for admission or employment, students, employees, of:

A.    The name or title, office address, electronic mail address, and telephone number of the employee designated as the Title IX Coordinator.

B.    The nondiscrimination policy statement contained in Section IV of this policy, the University's grievance procedures and grievance process, including how to report or file a complaint of sex discrimination, how to report or file a formal complaint of sexual harassment, and how the University will respond.

C.    The University must prominently display the contact information and policy statement described in V(a) on its website and in each handbook or catalog that it makes available to applicants for admission and employment, students, employees, or all unions or professional organizations holding collective bargaining or professional agreements with the University.

VII.    REPORTING

Any person may report sex discrimination, including sexual harassment (whether or not the person reporting is the person alleged to be the victim of conduct that could constitute sex discrimination or sexual harassment), to the Title IX Coordinator using any of the following methods:

- in person at 351 W. University Boulevard, Bennion Building, Suite 111, Cedar City, UT 84720 (8:00a.m. – 5:00pm business hours only)

- by mail at 351 W. University Boulevard, Cedar City, UT 84720 (anytime);

- by telephone at 435-586-5419 (anytime);



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 11 of 32

---

**SUBJECT:   SEXUAL MISCONDUCT**

---

- by electronic mail: **Title9@suu.edu** (anytime); or
- by any other means that results in the Title IX Coordinator receiving the person's oral or written report.

A.   **Who Must Report:** The following employees are officials with authority to institute corrective measures who must report sexual harassment or other sex discrimination to the Title IX Coordinator:

1.   The president and all employees reporting directly to the president;

2.   All supervisors, when reports concern their direct or indirect subordinates as potential complainants or respondents;

3.   The Vice President of Student Affairs, all employees reporting directly to the Vice President of Student Affairs, and all college deans when reports concern students as potential complainants or respondents.

4.   Consistent with Utah Code section 62A-4a-403, anyone who reasonably suspects any incident of sexual harassment or abuse involving a minor shall immediately report to campus police or the local police department. Employees who become aware of allegations involving a minor shall notify the Title IX Coordinator and their supervisor that they have reported the allegation to the police.

B.   **Who May Report:** All other faculty, staff, and students who become aware of sex discrimination or harassment are encouraged to report such issues, with the consent of the alleged victim, to the Title IX Coordinator.

C.   **Who May Not Report**: Licensed mental health counselors and medical professionals working within the scope of their license, or designated advocates authorized by the Title IX Coordinator, generally may not report incidents of sexual harassment except with written consent or in instances of imminent danger or when the victim is a minor or vulnerable adult.

VIII.       CONFIDENTIALITY



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 12 of 32

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

The University must maintain as confidential any supportive measures provided to the complainant or respondent, to the extent that maintaining such confidentiality would not impair the University's ability to provide the supportive measures.

The University  must keep confidential the identity of any individual who has made a report or complaint of sex discrimination, including any individual who has made a report or filed a formal complaint of sexual harassment, any complainant, any individual who has been reported to be the perpetrator of sex discrimination, any respondent, and any witness, except as may be permitted by the federal *Family Educational Rights and Privacy Act*, its regulations, or as required by *Utah Government Records and Management Act* (*GRAMA*), the federal *Health Information Portability and Accountability Act* (*HIPAA*) or other law, or to carry out the purposes of Title IX, including the conduct of any investigation, hearing, or judicial proceeding arising under Title IX.

The University will protect confidential communications to designated University advocates authorized by the Title IX Coordinator, protected under the Utah *Campus Advocate Confidentiality Amendments* (Utah Code § 53B-28-101 *et seq.*), where disclosure is not required by applicable federal law, including Title IX, Title VII, or the *Clery Act*, or consented in writing.

IX.      TRAINING

The University shall train Title IX Coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process on the definition of sexual harassment, the scope of the University's education program or activity, how to conduct an investigation and grievance process including live hearings, appeals, informal resolution processes, and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias.

**A.**      Training materials must not rely on sex stereotypes and must promote impartial investigations and adjudications of formal complaints of sexual harassment.

B.      The University will train decision-makers how to determine issues of relevance of questions and evidence, including when questions and evidence about the complainant's sexual predisposition or prior sexual behavior are not relevant, on evidentiary standards, and on live hearing procedures.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 13 of 32

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

C.   The University also must ensure that investigators receive training on issues of relevance to create an investigative report that fairly summarizes relevant evidence.

D.   The University will provide training to the Title IX Coordinator(s), hearing officer(s), and other necessary parties on all technology to be used in Live Hearings.

E.   All materials used to train Title IX Coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process must be made publicly available on the University's website.

X.   RECORDKEEPING

A.   The Title IX Office must maintain the following records for a period of seven years:

1.   Each sexual harassment investigation including any determination regarding responsibility and any audio or audiovisual recording or transcript required by this policy, any disciplinary sanctions imposed on the respondent, and any remedies provided to the complainant designed to restore or preserve equal access to the University's education program or activity;

2.   Any appeal and the result;

3.   Any informal resolution and the result; and

4.   All materials used to train Title IX Coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process.

B.   For each report to the Title IX Coordinator of sexual harassment in a University education program or activity against a person in the United States, the Title IX Office must create, and maintain for a period of seven years, records of any actions, including any supportive measures, taken in response to a report or formal complaint of sexual harassment. In each instance, the Title IX Office must document the basis for its conclusion that its response was not deliberately indifferent, and document that it has taken measures designed to restore or



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 14 of 32

---

**SUBJECT:   SEXUAL MISCONDUCT**

---

preserve equal access to the University's education program or activity. If the University does not provide a complainant with supportive measures, then the Title IX Office must document the reasons why such a response was not clearly unreasonable in light of the known circumstances. The documentation of certain bases or measures does not limit the University in the future from providing additional explanations or detailing additional measures taken.

XI.    PRELIMINARY REVIEW OF REPORTS AND FORMAL COMPLAINTS

A.    **Scope and Applicability of These Procedures:** All reports and formal complaints of sex discrimination, sexual harassment and retaliation, as defined in this policy, are subject to the procedures set forth in this section.

*B.*    **Preliminary Review of Reports of Sexual Harassment:**

**General Response:** Upon receiving a report of sexual harassment, the Title IX Coordinator shall promptly contact the complainant to (1) discuss the availability of supportive measures, (2) consider the complainant's wishes with respect to supportive measures, (3) inform the complainant of the availability of supportive measures with or without the filing of a formal complaint, and (4) explain the process for filing a formal complaint.

**Emergency Removal**: The University may remove a respondent from the University's education programs or activities on an emergency basis, provided that the appropriate officials undertake an individualized safety and risk analysis, determines that an immediate threat to the physical health or safety of any student, employee, or other individual arising from the allegations of sexual harassment justifies removal, and provides the respondent with notice and an opportunity to challenge the decision immediately following the removal.

1.    **Non-student Employee Leave:** A non-student employee respondent may be placed on administrative leave in accordance.

The Title IX Coordinator must further assess the reported conduct for any Clery obligations, including issuance of a timely warning, and report to campus or local law enforcement when necessary.

C.    **Grievance Process General Principles:**



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 15 of 32

SUBJECT:    SEXUAL MISCONDUCT

1.  Complainants, respondents, and witnesses shall be treated equitably and with respect throughout the grievance proceedings.

    a.  The University will evaluate all relevant evidence—both inculpatory and exculpatory—objectively and determine credibility without respect to a person's status as complainant, respondent, or witness.

2.  Deadlines and timeframes provided in this policy may extended for good cause with written notice to the parties and the reasons for the extension. Good cause may include considerations such as the absence of a party, a party's advisor, or witness; concurrent law enforcement activity; or the need for language assistance or accommodation of disabilities.

    a.  Parties may submit a request for a temporary delay to the Title IX coordinator. Any request for temporary delay or limited extension should include a good cause statement and the reason(s) for the request. If no good cause exists, Title IX Coordinator will deny the requesting party's request in writing.

3.  Any person designated as a Title IX Coordinator, investigator, or decision maker shall be free of conflict of interest or bias for or against Complainants or Respondents generally or individually.

4.  Respondents, complainants, and witnesses shall not knowingly make materially false statements or knowingly submit materially false information during the grievance process. However, a determination regarding responsibility alone is not sufficient to conclude that any individual proffered a material falsehood.

5.  Complainants and respondents shall have supportive measures made available and be given the opportunity to request modifications necessary for physical and/or emotional safety.

    a.  Complainants, respondents, and other participants in the Title IX process may request accommodations necessary under the *Americans with Disabilities Act* (*ADA*) through the Title IX



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 16 of 32**

**SUBJECT:    SEXUAL MISCONDUCT**

Coordinator, who will refer the request to the appropriate ADA coordinator and then implement approved accommodations.

D.    **Formal Complaint:** A formal complaint is a document filed by a complainant or signed by the Title IX Coordinator alleging sex discrimination, sexual harassment, or retaliation. A formal complaint may be filed by a complainant who is participating in or attempting to participate in an education program or activity of the University at the time of filing the formal complaint.

1.    A formal complaint shall be filed with the Title IX Coordinator in person, by mail, or by electronic mail, by using the contact information posted for the Title IX Coordinator in section VI above.

2.    The formal complaint shall contain written notice of the allegations of sex discrimination, sexual harassment, or retaliation, including a concise statement describing the incident, when and where the misconduct occurred, why the complainant believes it violates University policy, and a proposed resolution. The complainant shall be instructed to provide and preserve all corroborating or potentially relevant evidence in any format, list potential witness names, and sign the statement. From this information, the Title IX Coordinator shall prepare a Notice of Investigation as defined in Section XII(B).

3.    By filing a formal complaint, the complainant is giving consent for the Title IX Coordinator, designated deputy coordinators, and/or investigators to discuss the information provided with other persons who may have relevant factual knowledge of the circumstances of the complaint, and is authorizing the collection and examination of all records and other documentation relevant to the complaint.

4.    The Title IX Coordinator may independently initiate a formal complaint and investigation if necessary to provide safe and nondiscriminatory educational programs and activities, unless doing so would be clearly unreasonable in light of the known circumstances, The Title IX Coordinator may consider a variety of factors, including a pattern of alleged misconduct by a particular respondent, in deciding whether to sign a formal complaint. When the Title IX Coordinator signs a formal complaint, the Title IX Coordinator is not a Complainant or otherwise a



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 17 of 32

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

party under this policy and must remain free of bias or conflict of interest with respect to any party. In this situation, the complainant is treated as a party, though their right to not participate is protected.

E.    **Consolidation of Formal Complaints:** The University may consolidate formal complaints against more than one respondent, or by more than one complainant against one or more respondents, or by one party against the other party, where the allegations of sexual harassment arise out of the same facts or circumstances.

F.    **Dismissal of the Formal Complaint:** The University must investigate all allegations in a formal complaint unless the conduct alleged in the formal complaint:

- Would not constitute sexual harassment as defined in this policy even if proved;

- Did not occur in the University's education programs or activities; or

- Did not occur against a person in the United States.

1.    If the conduct falls within the criteria outlined above, the University must dismiss the formal complaint with regard to that conduct for the purposes of Title IX; such dismissal does not preclude investigation or action under another provision of the University code of conduct or policy.

2.    The University may dismiss the formal complaint or any allegations therein, if at any time during the investigation or hearing:

a.    A Complainant notifies the Title IX Coordinator in writing that the Complainant wants to withdraw the formal complaint or any allegations therein;

b.    The Respondent is no longer enrolled or employed by the University; or

c.    Specific circumstances prevent the University from gathering evidence sufficient to reach a determination as to the formal complaint.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 18 of 32**

---

SUBJECT:   SEXUAL MISCONDUCT

---

3.   Upon a required or permitted dismissal of the formal complaint, the Title IX Coordinator shall promptly send written notice of the dismissal and the reason(s) therefor simultaneously to the parties.

4.   Any party may appeal the dismissal of a formal complaint in accordance with section XIX of this policy.

XII.   INFORMAL RESOLUTION

The University may offer an informal resolution process only after a formal complaint is filed. Informal resolution may include a limited inquiry into the facts, but typically does not include an investigation. Informal resolution should be flexible enough to meet the needs of each case, and may include mediating an agreement between the parties, separating the parties, referring the parties to counseling programs, conducting targeted preventive educational and training programs, or providing remedies for the individual harmed by the offense.

Participation in the informal resolution process is voluntary; the University may not require either party to engage in informal resolution as a condition of enrollment or employment or enjoyment of any other right, waiver of the right to investigation and adjudication of formal complaints of sexual harassment.

A.   The University is not obligated to offer or facilitate informal resolutions. Because each case is different, the Title IX Coordinator shall determine whether a formal complaint of sexual harassment, discrimination, or retaliation is appropriate for informal resolution.

B.   At any time before reaching a determination regarding responsibility the Title IX Office may facilitate an informal resolution process, such as mediation, that does not involve a full investigation and adjudication, provided that the Title IX Office:

1.   Provides to the parties a written notice disclosing: the allegations, the requirements the informal resolution process including the circumstances under which it precludes the parties from resuming a formal complaint arising from the same allegations, provided, however, that at any time prior to agreeing to a resolution, any party has the right to withdraw from the informal resolution process and resume the grievance process with respect to the formal complaint, and any consequences resulting from



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 19 of 32

---

SUBJECT:    SEXUAL MISCONDUCT

---

participating in the informal resolution process, including the records that will be maintained or could be shared;

**2.** Obtains the parties' voluntary, written consent to the informal resolution process; and

3. Does not offer or facilitate an informal resolution process to resolve allegations that an employee sexually harassed a student.

4. The University endeavors to conclude informal resolution promptly and shall keep a written record of all informal resolution efforts in accordance with section IX of this policy.

C. After concluding informal resolution of a complaint, the Title IX Coordinator shall notify the complainant and respondent of the resolution that was agreed upon.

XIII.    FORMAL INVESTIGATIONS

If a Complainant files a formal complaint or the Title IX Coordinator signs a formal complaint, the University shall conduct a thorough, impartial investigation by interviewing witnesses, collecting documentary evidence, and preparing a written report of findings. The purpose of the investigation is to establish whether there is a reasonable basis, based on a preponderance of the evidence, to conclude the Respondent violated this policy. The University reserves the right to engage an outside investigator to conduct the investigation. Investigations under this policy shall incorporate the following standards:

A. The burden of proof and the burden of gathering evidence sufficient to reach a determination rests on the University and not on the parties.

1. The University shall not access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the University obtains the party's voluntary, written consent to do so for a grievance process under this policy.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 20 of 32

---

**SUBJECT:   SEXUAL MISCONDUCT**

---

2.   The University shall presume the Respondent is not responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process.

3.   The University will not restrict the ability of either party to discuss the allegations under investigation or to gather and present relevant evidence. This section notwithstanding,

   a.   Retaliation is prohibited. Attempts to alter or prevent a witness's or party's testimony are forms of prohibited retaliation.

   b.   Parties may be directed to cease communications with one another (i.e., a "no contact order").

   c.   Parties' communications remain subject to state laws protecting against defamation and tortious invasions of privacy, such as intrusion upon seclusion, publication of private facts, and false light claims.

4.   The University shall provide an equal opportunity for the parties to present witnesses, including fact and expert witnesses, and other inculpatory and exculpatory evidence.

5.   Investigators or others shall not question the complainant, or otherwise seek evidence, regarding the Complainant's sexual predisposition or prior sexual conduct with anyone other than the respondent(s).

6.   Parties may choose to be accompanied by an advisor of their choice, who may be, but is not required to be, an attorney, to any related meeting or proceeding. The advisor may not disrupt the meetings or other proceedings or speak on behalf of the party. Generally, the advisor is limited to listening and quietly conferring with the party. If an advisor is disruptive even after warning, the investigator may exclude them from meetings.

7.   At any time before or during the investigation, the investigator may recommend that the University provide support measures for the parties or witnesses.  Any individual's intentional interference with support



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 21 of 32**

---

**SUBJECT:   SEXUAL MISCONDUCT**

---

measures may be considered retaliatory and a separate violation of this policy.

8.   If either party fails to participate in the investigation, the investigator(s) may make findings without the response of that party, potentially leading to an unfavorable outcome for that party, or the Title IX Coordinator may dismiss the case according to section X(F) of this policy.

9.   The University will provide to a party whose participation is expected or invited, written notice of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings, with sufficient time for the party to prepare to participate.

10.  The University will provide each parties with equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the formal complaint, including all inculpatory or exculpatory evidence, whether relied upon or not in reaching findings, so that each party can meaningfully respond to the evidence prior to the conclusion of the investigation.

The Title IX Coordinator shall choose the investigator(s), except in cases where the Title IX Coordinator or others involved in the investigation have a conflict of interest, in which case the University's Office of General Counsel shall select internal or external impartial investigator(s).

B.   Upon initiating an investigation, the University shall provide the parties with a copy of the formal complaint, a notice of investigation, and a copy of this policy. A notice of investigation shall include statements informing the parties that the Respondent is presumed not responsible for the alleged conduct and that a determination of responsibility is made at the conclusion of the grievance process; that the parties may have an advisor of their choice, who may be, but is not required to be, an attorney, and who may inspect and review evidence; and inform the parties of any provision in the University's code of conduct that prohibits knowingly making false statements or knowingly submitting false information during a grievance process.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 22 of 32**

---

**SUBJECT:   SEXUAL MISCONDUCT**

---

C.   If, at any point during the investigation, the University determines a need to investigate allegations not included in the formal complaint, the University must provide notice of the additional allegations to the parties, if known.

D.   Upon conclusion of the investigative fact-finding, the investigator(s) shall prepare a draft report that summarizes the Complainant's allegations and Respondent's responses, summarizes the relevant evidence and the material witnesses supporting or opposing the allegation(s), and includes preliminary findings.

E.   Before the report is finalized, investigators will give Complainant and Respondent and their advisors equal opportunity to review any evidence obtained as part of the investigation that is directly related to the allegations in the formal complaint, including evidence upon which the University does not intend to rely in reaching a determination of responsibility, whether inculpatory or exculpatory, in electronic or hard copy format.

F.   The parties may submit a written response or information to the investigator within ten business days of the date of the notice of the opportunity to review the draft report and evidence. This is the parties' final opportunity to submit any additional information or witnesses. In the absence of good cause, investigators shall not consider information discoverable through the exercise of due diligence that is not provided to the investigator(s) at this juncture.

   1.   Investigator(s) shall consider any written response, information, or evidence provided by the parties.

G.   The investigator(s) shall prepare a final investigation report that contains a statement of the allegations, the positions/responses of the parties, a summary of relevant evidence and material witnesses the investigator(s) relied on, and any findings of fact.

   1.   A recommended decision of "unfounded" indicates that the investigator believes either that there is insufficient evidence to conclude that the event(s) occurred as alleged, or even if the event(s) occurred, it/they did not constitute sexual harassment or retaliation.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 23 of 32

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

      2.    A recommended decision of "inconclusive" means that the investigator believes the evidence provided by both parties did not reach a preponderance of evidence in favor of either party.

      3.    A recommended decision of "substantiated" means that the investigator believes the events occurred as alleged by a preponderance of evidence in favor of the complainant.

H.    The Title IX Coordinator, designee, or an attorney assigned by the Office of the General Counsel shall review each final investigation report or summary before it is finalized to ensure compliance with this policy.

I.    The final report shall be provided to the parties and their advisors, if any, in an electronic or hard copy format, at least ten days prior to any hearing under this policy, for their review and written response.

J.    Nothing in this procedure shall be interpreted to alter the status of otherwise at-will employees.

XIV.    LIVE HEARINGS

Upon receipt of the Final Investigation Report, the Title IX Coordinator will have ten business days to appoint a Hearing Officer or Hearing Panel.

Upon appointing a Hearing Officer or Hearing Panel ("hearing officer"), the Title IX Coordinator will issue to the parties and the parties' advisors, in either an electronic or hard copy format, a Notice of Hearing containing dates, deadlines, and/or requirements appropriate for the orderly administration of the live hearing as determined by the hearing officer or panel assigned to the live hearing under this policy.

The Notice of Hearing will contain a statement informing the parties that the University must, upon either party's request, provide for a live hearing where the parties are located in separate rooms with technology enabling the Hearing Officer and the parties to simultaneously see and hear the party or witnesses answering questions.

XV.    REQUIRED DISCLOSURES

As outlined in Section XII(I), the parties and the parties' advisors received in either an electronic or hardcopy format a copy of the Final Investigation Report and all evidence,



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 24 of 32**

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

exculpatory or inculpatory—whether or not the evidence was relied upon to reach the findings in the Final Investigation Report—related to the allegations in the Formal Complaint.

A.    **Disclosure of expert testimony.** A party shall disclose the identity of any person who may be used at hearing to present expert opinion evidence to the University and other parties no later than five business days prior to the date of the Live Hearing.

    1.    Unless otherwise stipulated, this disclosure shall be accompanied by a written report prepared and signed by the witness or party. The report shall contain the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; and the expert's qualifications of the witness.

    2.    A party seeking to present the testimony of an expert witness at the Live Hearing shall certify that the individual providing the expert testimony is qualified to offer the opinions.

    3.    The Hearing Officer may exclude expert testimony that is not relevant.

At least seven calendar days before the hearing date, the University, Complainant, and Respondent must provide each other a list of witnesses and documents that they will be presenting to the hearing officer.

B.    Parties may be accompanied to the Live Hearing by the advisor, who may be, but is not required to be, an attorney.

    1.    The University will not limit the choice or presence of a party's advisor, but the Hearing Officer may limit an advisor's participation if the advisor becomes unreasonably disruptive to the proceedings.

    2.    If an attorney appears on behalf of a party, notice served on the attorney is considered notice to the party.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 25 of 32**

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

    3.      Advisors may participate in the Live Hearing through asking the other party and any witnesses all relevant questions and follow-up questions, including those challenging credibility.

    4.      Cross-examination at the live hearing must be conducted directly, orally, and in real time by a party's advisor and never by a party personally.

    5.      If a party does not have an advisor present at the live hearing, the University must provide without fee or charge to that party, an advisor of the University's choice, who may be, but is not required to be, an attorney, to conduct cross-examination on behalf of that party.

    6.      The University is not a party to the Live Hearing, but it shall be the University, not the parties, that bears the burden of producing evidence through the investigative report to the Hearing Officer.

    7.      The University must remain objective and impartial throughout the grievance process, including impartially presenting the investigative report to the Hearing Officer for determination.

    8.      The standard of proof for determining responsibility is preponderance of the evidence.

**XVI.**    HEARING OFFICER RESPONSIBILITIES

The Hearing Officer cannot be the same person(s) as the Title IX Coordinator or the investigator(s).

The Hearing Officer shall regulate the course of the live hearing to obtain full disclosure of relevant facts and to afford all parties reasonable opportunity to present their positions.

On the Hearing Officer's or own motion or upon objection by a party's advisor, the Hearing officer:

A.    May exclude evidence that is irrelevant or unduly repetitious.

B.    Shall exclude irrelevant questions directed to a party or witness. Before a party or witness answers a cross-examination or other question, the Hearing Officer must



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 26 of 32**

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

first determine whether the question is relevant and explain any decision to exclude a question as not relevant.

C.    Shall exclude evidence privileged in the courts of Utah, unless the privilege at issues is specifically waived by the parties.

D.    Shall exclude questions or evidence about the Complainant(s)' sexual predisposition or prior sexual behavior as not relevant unless 1) questions or evidence of the Complainant(s)' prior sexual behavior are offered to prove that someone other than Respondent(s) committed the conduct alleged by Complainant(s), or 2) questions or evidence concern specific incidents of the Complainant(s)' prior sexual behavior with respect to Respondent(s) and are offered to prove consent.

E.    May receive documentary evidence in the form of a copy or excerpt if the copy or excerpt contains all pertinent portions of the original document.

F.    The Hearing Officer may not exclude evidence solely because it is hearsay.

G.    The Hearing Officer shall afford the parties' advisors the opportunity to conduct cross examination.

    1.    If a party or witness does not submit to cross-examination at the Live Hearing, the Hearing Officer must not rely on any statement of that party or witness in reaching a determination regarding responsibility and cannot draw an inference about the determination regarding responsibility based solely on a party's or witness's absence for the Live Hearing or refusal to answer cross-examination or other questions.

H.    The University shall record the hearing and provide a copy or transcript of the hearing to the parties for inspection and review.

I.    The hearing shall be conducted with all parties physically present in the same geographical location or, upon request by either party or the Hearing Officer, any or all parties, witnesses, and other participants may appear at the Live Hearing virtually, with technology enabling participants simultaneously to see and hear each other.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 27 of 32**

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

    1.    Nothing in this section precludes the Hearing Officer from taking appropriate measures necessary to preserve the integrity of the hearing.

    2.    After the close of the Live Hearing, the Hearing Officer or Hearing Panel will issue a Written Determination regarding responsibility.

XVII.    WRITTEN DETERMINATION

The Hearing Officer will provide the Written Determination to the Title IX Coordinator within 20 calendar days after the Live Hearing concludes.

    A.    The written determination must include:

        1.    Identification of the allegations potentially constituting sexual harassment as defined in this policy.

        2.    A description of the procedural steps taken from the receipt of the Formal Complaint through the determination including any notifications to the parties, interviews with the parties and witnesses, site visits, methods used to gather other evidence, and hearings held.

        3.    Findings of fact supporting the determination.

        4.    Conclusions regarding the application of the University policy to the facts.

        5.    A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, and recommended disciplinary sanctions for the University to impose on the Respondent, and a recommendation of whether the University will provide remedies designed to restore and preserve equal access to the University's education program or activity to the Complainant.

        6.    The University's procedures and permissible bases for the Complainant and Respondent to appeal.

    B.    The Hearing Officer shall provide the Written Determination to the Title IX Coordinator, the Title IX Coordinator shall then provide the Written Determination to the responsible University official, as outlined in the table below, for a decision regarding Sanctions, per Section XVIII.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 28 of 32

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

| Respondent's Affiliation with University | Responsible University Administrator |
|---|---|
| Student | Dean of Students or designee |
| Faculty member | Director of Human Resources (in consultation with the Provost or designee) |
| Executive employee or direct report of a vice president | Vice president of the relevant department |
| Administration or staff member who is not an executive employee and does not report directly to a vice president | Director of Human Resources or designee |
| Vice president or direct report of University President | University President |
| Contractor, vendor, or visitor | Vice President of Finance |

C.    The Responsible University Administrator shall have 7 calendar days from the date of receipt of the Written Determination to provide the Title IX Coordinator with the Written Determination and a decision of the disciplinary sanctions the University will impose on the Respondent, and a decision of whether the University will provide remedies designed to restore and preserve equal access to the University's education program or activity to the Complainant.

D.    Within 30 days of the Live Hearing, The Title IX Coordinator will provide the Written Determination with the decision of sanctions and remedies to the parties and their advisors simultaneously.

E.    The determination regarding responsibility and sanctions becomes final either on the date that the recipient provides the parties with the written determination of the result of the appeal, if an appeal is filed, or if an appeal is not filed, the date on which an appeal would no longer be considered timely.

F.    Nothing in this procedure shall be interpreted to alter the status of otherwise at-will employees.

XVIII.        SANCTIONS AND REMEDIES



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

Policy # 5.60
Date Approved: 03/24/17
Date Amended: 08/07/20
Reviewed w/ No Changes:
Office of Responsibility: Title IX
Page 29 of 32

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

Upon receiving a determination of responsibility either in a Written Determination or as a result of an informal resolution, the responsible University administrator shall promptly determine the appropriate sanctions and remedies based on the information provided, including offering remedies to the complainant and/or University community, implementing changes in programs and activities, providing training, and imposing any disciplinary sanctions. In consultation with the Title IX Coordinator and the Office of General Counsel, (and with Human Resources when the respondent is an employee) the responsible University administrator shall ensure any proposed sanctions and remedies are appropriate to end the prohibited conduct, to prevent further violation of this policy, and remedy the effects of any violation. In determining the appropriate sanction(s), the responsible University administrator shall be guided by the following considerations:

- The severity, persistence, or pervasiveness of the misconduct;

- The nature of violence in the misconduct and/or use of weapons, drugs, or alcohol (if applicable);

- The impact of the misconduct on the complainant;

- The impact or implications of the misconduct on the University community;

- Prior misconduct by the respondent, including the respondent's relevant prior disciplinary history;

- Whether the respondent has accepted responsibility for the misconduct;

- The maintenance of a safe, nondiscriminatory, and respectful working and learning environment; and

- Any other mitigating, aggravating, or compelling factors.

A.    Respondents who are found to have violated this policy may be subject to the following sanctions:

    **1.**    Faculty/Staff: Possible sanctions against faculty and non-faculty employees for violations of this policy include verbal counseling, written warning, probation, reassignment, transfer, demotion, reduction in pay, suspension, termination of employment, and an order of no trespassing on campus and/or in University programs, services, and activities**.**

    2.    Students: Possible sanctions against students for violations of this policy include fines, restitution, interim suspension, suspension, suspension



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 30 of 32**

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

withheld, warning, probation, expulsion, withholding diploma, revocation of certificate or degree, discretionary sanction, organizational sanction, and notation on the student's transcript consistent with the *Family Educational Rights and Privacy Act*.

3.   Vendors/Contractors/Visitors: Possible sanctions against vendors, contractors or visitors to campus who are neither students nor employees of the University include banning the individuals from all or part(s) of the University and/or ending business relationships with the vendors and contractors.

B.   **Amnesty**: Any student who makes a good faith report of sexual harassment or sexual violence, as defined at Utah Code 53B-28-201, that was directed at them or another person will not be sanctioned by the University for a violation related to the use of drugs or alcohol that the University discovers because of the report.

C.   The responsible University administrator shall send any proposed sanctions and remedies—subject to a final determination on the alleged violations--in writing to the complainant, respondent, Title IX Coordinator, and Hearing Officer. However, the responsible University administrator, in consultation with the Title IX Coordinator, may choose not to disclose to the complainant the sanctions, and shall not disclose to the complainant the discipline imposed on a respondent student, except under the following circumstances:

1.   The discipline directly affects the other party, such as when the respondent student is ordered to stay away from the other party, is transferred to another job site, worksite, class, or is suspended or dismissed from the University; or

2.   The complainant alleged sexual harassment involving a crime of violence or a non-forcible sex offense; or

3.   The respondent student gives their written permission to disclose the discipline.

D.   The University complies with all applicable reporting requirements and reserves the right to report findings of criminal misconduct to the police.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 31 of 32**

---

**SUBJECT:    SEXUAL MISCONDUCT**

---

XIX.     APPEALS

Any party may appeal a decision regarding responsibility or from the dismissal of any portion of a formal complaint for any of the following reasons:

A.     A procedural irregularity that affected the outcome of the hearing.

B.     New evidence that was not reasonably available at the time of the decision or dismissal.

C.     The Title IX coordinator, the investigators, or the hearing officer had a conflict of interest or bias for or against complainants or respondents generally or the individual complainant or respondent that affected the outcome.

D.     If the respondent has been determined responsible for sexual harassment, any party may simultaneously appeal the decision regarding sanctions for any the following reasons:

   1.     The decision-maker has a conflict of interest or bias for or against complainants or respondents generally or the individual complaint or respondent that affected the outcome.

   2.     The sanction is clearly unreasonable in light of the known circumstances.

E.     The Title IX coordinator must receive written notice of a party's intent to appeal within 10 calendar days after receipt of the Written Determination.

F.     Upon receiving an appeal, the Title IX coordinator must notify the other party within five business days.

G.     The Title IX coordinator must notify both parties of who will determine the appeal and that person's contact information within five business days of receiving the appeal.

H.     The person determining the appeal ("appeal officer") is the cognizant vice president or their designee. The appeal officer must be free of any bias or conflict of interest with respect to any party.



**SOUTHERN UTAH UNIVERSITY**
**Policies and Procedures**

**Policy # 5.60**
**Date Approved: 03/24/17**
**Date Amended: 08/07/20**
**Reviewed w/ No Changes:**
**Office of Responsibility: Title IX**
**Page 32 of 32**

---

**SUBJECT:   SEXUAL MISCONDUCT**

---

I.   The appeal officer must not be anyone involved in the grievance process before the appeal.

J.   The parties may submit a written statement to the appeal officer supporting or opposing the decision of the hearing officer.

   1.   The appeal officer must receive any written statements within 10 calendar days of the Title IX coordinator sending the notice to the parties.

K.   The appeal officer may review all written statements, reports, evidence, and recordings and make a written decision.

L.   The appeal officer's written report may affirm or modify the hearing officer's decision, remand the decision to the hearing officer, order a new investigation or overturn the decision.

M.   The appeal officer will simultaneously issue a report to both parties detailing the decision and the rationale for the decision.

N.   The appeal officer's decision is final.